

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NOS. AP-76,470 & AP-76,471

### STATE OF TEXAS EX REL. PATRICIA R. LYKOS, Relator

v.

### THE HONORABLE KEVIN FINE, Respondent

### ON MOTION FOR LEAVE TO FILE PETITION FOR WRIT OF PROHIBITION AND PETITION FOR WRIT OF MANDAMUS FROM CAUSE NO. 1170853 IN THE 177TH DISTRICT COURT HARRIS COUNTY

COCHRAN, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, JOHNSON, KEASLER, and HERVEY, JJ., joined. PRICE and WOMACK, JJ., dissented.

OPINION

The real party in interest in this writ of mandamus and prohibition action is John Edward Green, Jr., the defendant in a pending capital murder case. Mr. Green has been charged with the capital murder of Tina Vo, and the State has given notice of its intent to seek the death penalty. The case has not gone to trial and no one knows what evidence the

State will offer at trial. No one knows whether a jury will convict Mr. Green of capital

murder if he is tried. No one knows whether Mr. Green will be sentenced to death by a jury

of his peers if that jury should find him guilty of capital murder.

Nonetheless, on April 2, 2010, Mr. Green filed an "Amended Motion to Declare

Article 37.071, § 2 of the Texas Code of Criminal Procedure Unconstitutional as Applied."

In that motion he asserts that Article 37.071, the Texas death-penalty sentencing statute, is

unconstitutional because "its application has created a substantial risk that innocent people

have been, and will be, convicted and executed."[1]  On November 22, 2010, the State, acting

through the Harris County District Attorney as Relator, filed a Motion for Leave to File

Petition for Writ of Prohibition and Petition for Writ of Mandamus requesting this Court to

prohibit a pretrial evidentiary hearing on Mr. Green's motion and to prohibit the trial judge

from granting such a motion before the State has had an opportunity to prove its charged

indictment before a jury. We denied the State's motion on November 29, 2010 because no

such hearing had commenced in the district court and this Court could not know what

evidence might be offered at such a hearing. The State's request was premature.[2]  We stated

that

> it appears that much of the "evidence" respondent seems to want presented at
> this hearing is not relevant to the question at issue. However, because we

---

[1] Amended Motion to Declare Article 37.071, § 2 of the Texas Code of Criminal Procedure Unconstitutional as Applied ("Amended Motion") at 1.

[2] *State of Texas ex rel. Patricia R. Lykos v. The Honorable Kevin Fine*, Nos WR-75, 015-01 & WR-75, 015-02, 2020 WL 4882024 *1 (Tex. Crim. App. Nov. 29, 2010).

cannot know whether relevant evidence will be presented, we find that relator's request that this Court order respondent to withdraw his order setting a hearing is premature and currently without a basis.[3]

On December 6, 2010, the trial judge of the 177th District Court in Harris County commenced an evidentiary hearing on Mr. Green's motion, and several witnesses testified to general data, issues and concerns about the death penalty in the United States and about some specific aspects of the Texas death-penalty statutory scheme. That hearing continued on December 7th. On that same day, the State filed a Motion for Reconsideration on the Court's Own Initiative and requested a stay in the proceedings. Finding that "[w]e now know what witnesses are going to testify," and based on that additional information, we granted a stay of the proceedings in the trial court on December 7, 2010, to give all of the interested parties and the trial judge an opportunity to respond to the State's original request for leave to file an application for writ of mandamus or prohibition.

Based upon the filings that we presently have before us,[4] we conditionally grant the State mandamus and prohibition relief because it has established both that (1) it has no other adequate legal remedy; and (2) it has a "clear right to the relief sought" and the merits of its

---

[3] *Id.*

[4] We have received (1) the State's original Petition for Writ of Mandamus and Prohibition plus a book of Exhibits; (2) the Real Party in Interest's Brief in Opposition; (3) The Real Party in Interest's Second Brief in Opposition; (4) an Amicus Brief in Support of the Real Party in Interest; and (5) a Brief of Attorney General Greg Abbott as Amicus Curiae.

legal position are "beyond dispute."[5]

## A.      What is This Evidentiary Hearing About?

Mr. Green's amended motion seeks a pretrial ruling from the trial judge declaring "Article 37.071, § 2 of the Texas Code of Criminal Procedure unconstitutional as applied pursuant to the Eighth and Fourteenth Amendments of the United States Constitution, and Article 1, Section 13 of the Texas Constitution."[6]  Mr. Green points to a March 26, 2010 hearing in which the trial judge set out certain issues to be addressed in a pretrial evidentiary hearing that the judge proposed:

> The issue or issues that must be addressed are, first, whether or not it is a violation of due process to execute an innocent defendant; second, it must be determined whether or not the State of Texas under [art. 37.071] has, in fact, executed an innocent person; and finally, if they have executed an innocent person, does the defendant . . .  have a basis to raise a claim based on these facts.

These are indeed weighty public policy issues, greatly deserving of considerable debate by the appropriate people, in the appropriate forum, and at the appropriate time.  They are issues that opponents of capital punishment have been raising since the mid-nineteenth century.[7]

---

[5] *State v. Patrick*, 86 S.W.3d 592, 594 (Tex. Crim. App. 2002) ("To be entitled to a writ of mandamus, the State must demonstrate that: (1) there is no other adequate legal remedy, and (2) there is a clear and indisputable right to the relief sought."); *see also Neveu v. Culver*, 105 S.W.3d 641, 642 (Tex. Crim. App. 2003); *State ex rel. Rosenthal v. Poe,* 93 S.W.3d 194, 198 (Tex. Crim. App. 2003).

[6] Amended Motion at 1.

[7] *See* STUART BANNER, THE DEATH PENALTY: AN AMERICAN HISTORY 121-22 (2002) (by 1859, "[a]bolitionists were meanwhile formulating a new way of attacking the death penalty's retributive justification.  They began to argue that innocent people were often executed by mistake.  Individual condemned men and women had long claimed their own innocence, of

Certainly the Texas Legislature is an appropriate forum in which to debate these public policy issues.[8] That is also an appropriate forum to decide whether to abolish the death penalty in Texas or to enact statutory or constitutional improvements to the current legislative system. The Legislature will be meeting in the very near future and is fully competent to address these issues. The trial judge correctly questioned whether a pretrial hearing in one particular capital murder proceeding, subject to the presentations only of the two particular parties before it–one criminal defendant and one prosecuting authority–is an appropriate forum to fully develop and debate these general issues. And, implicit in the trial judge's question, is the legal inquiry whether those general public-policy issues can or should be debated in a single criminal pretrial proceeding before the specific defendant is even placed in jeopardy of being convicted or sentenced.

In his amended motion, Mr. Green first argues that he states a pretrial Eighth Amendment claim based upon whether the capital-punishment procedures or factors give rise to a "substantial," "unacceptable," "significant," or "intolerable" risk of an unreliable outcome or infliction of harm.[9] Indeed, every defendant who pleads "not guilty" runs some

course. What was new was the broader assertion that government ought to abandon capital punishment in general because so many innocent people were going to their deaths on the gallows.").

[8] Several Texas Legislators–Rep. Lon Burnam, Senator Rodney Ellis, Rep. Jessica Farrar, and Rep. Armando Walle–joined the Amicus Brief on behalf of Mr. Green. These legislators are perfectly positioned to bring the issues and concerns addressed in the Amicus Brief to the attention of the Texas Legislature and to suggest and enact legislative changes as appropriate.

[9] Amended Motion at 4 (citing *Baze v. Kentucky*, 553 U.S. 35, 128 S.Ct. 1520, 1530-31 (2008)).

risk of a "wrongful" conviction–the question is whether the entire criminal justice system is so fraught with errors, incompetence, or fraud that one should not be subject to its actions. Mr. Green then asserts that he will set out, in both his pleading and his pretrial evidentiary hearing, risk "factors that, in total or in combination, affect every person facing capital charges in Texas who claims to be innocent." This sounds remarkably like a facial attack upon the Texas statutory death-penalty scheme.

     1.     *Is this a facial challenge?*

If Mr. Green is mounting a facial challenge to the Texas death-penalty scheme, then he must prove that the system can never be constitutionally applied to any Texas defendant charged with capital murder, no matter what the individual facts and circumstances of the particular case. A party raising a facial challenge to the constitutionality of a statute must demonstrate that the statute operates unconstitutionally in all of its applications.[10] In a facial challenge to a statute's constitutionality, courts consider the statute only as it is written, rather than how it operates in practice.[11] Thus, if Mr. Green is challenging the constitutionality of Article 37.071 as it is written, he may not offer evidence to show how it operates in actual practice,[12] as such evidence is irrelevant to a facial challenge, which asserts that there are no

---

[10] *See Gillenwaters v. State*, 205 S.W.3d 534, 536 n.2 (Tex. Crim. App. 2006).

[11] *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000) ("In a facial challenge to a statute's constitutionality, we consider the statute as written, rather than as it operates in practice.").

[12] *See Texas Workers' Compensation Com'n v. Garcia*, 893 S.W.2d 504, 520 (Tex. 1995). Regarding factual inquiries when challenging the facial constitutionality of a statute, the Texas

factual circumstances under which the statute would be constitutional.[13]  That is, a facial

challenge to a statute is extremely difficult to prove as all courts presume that the Legislature

enacted a constitutional law and all courts must seek to uphold the facial constitutionality of

legislative enactments.[14]

In the context of capital punishment, the United States Supreme Court has already

stated that, "in assessing a punishment selected by a democratically elected legislature against

the constitutional measure, we presume its validity."[15]  It bears noting that no provision of

the current Article 37.071 has been held unconstitutional by the Supreme Court or this Court,

although that statute has been attacked many times.

_____

Supreme Court stated:
> [Generally,] the constitutionality of a law is not to be determined on a question of
> fact to be ascertained by the court. If under any possible state of facts an act would
> be constitutional, the courts are bound to presume such facts exist; and therefore
> the courts will not make a separate investigation of the facts, or attempt to decide
> whether the legislature has reached a correct conclusion with respect to them.

*Id.* (quoting *Corsicana Cotton Mills v. Sheppard*, 71 S.W.2d 247, 250 (1934)).

[13] *Briggs v. State*, 789 S.W.2d 918, 923 (Tex. Crim. App. 1990) ("'A facial challenge to a
legislative Act is, of course, the most difficult challenge to mount successfully, since the
challenger must establish that no set of circumstances exists under which the Act would be
valid.'") (quoting *United States v. Salerno,* 481 U.S. 739, 745 (1987)).

[14] *See Smith v. Davis*, 426 S.W.2d 827, 831 (Tex.1968).  The Texas Supreme Court
stated:
> In passing upon the constitutionality of a statute, we begin with a presumption of
> validity. It is to be presumed that the Legislature has not acted unreasonably or
> arbitrarily; and a mere difference of opinion, where reasonable minds could differ,
> is not a sufficient basis for striking down legislation as arbitrary or unreasonable.
> The wisdom or expediency of the law is the Legislature's prerogative, not ours.

*Id.*

[15] *Gregg v. Georgia*, 428 U.S. 153, 175 (1976) (joint opinion of Stewart, Powell, and
Stevens, JJ.).

Furthermore, "the constitutionality of a statute is not to be determined in any case unless such a determination is absolutely necessary to decide the case in which the issue is raised."[16] Here, Mr. Green has not been convicted of anything, much less has he been sentenced pursuant to Article 37.071, § 2.[17] "We have held that it is incumbent upon an accused to show that he was convicted or charged under that portion of the statute the constitutionality of which he questions. We do not write declaratory judgments."[18] We therefore must presume Mr. Green is not attempting to litigate the facial constitutionality of Article 37.071, because then he would be seeking, in his own case, a prohibited declaratory judgment concerning Article 37.071.

   2.    *This is a very strange as-applied challenge.*

A litigant raising only an "as applied" challenge concedes the general constitutionality

---

[16] *Briggs v. State*, 740 S.W.2d 803, 806-07 (Tex. Crim. App. 1987) (citing *Skinner v. State,* 652 S.W.2d 773, 776 (Tex. Crim. App. 1983); *Coberly v. State,* 644 S.W.2d 734, 735 (Tex. Crim. App. 1983)).

[17] *See Ex parte Spring*, 586 S.W.2d 482, 485 (Tex. Crim. App. 1978) ("A constitutional attack may not be based on an apprehension of future injury."); *Bush v. Texas*, 372 U.S. 586, 590 (1963) ("We observe that, as a rule of consistent application, 'this Court has declined to anticipate a question of constitutional law in advance of the necessity of deciding it.'"); *but see United States v. Quinones*, 313 F.3d 49 (2nd Cir. 2002) (holding that defendant could make a facial challenge to the federal death-penalty act in a pretrial motion; government could appeal adverse trial-court legal ruling; trial court's purely legal ruling was reviewed *de novo* and reversed; concluding that federal death penalty statute was facially constitutional).

[18] *Ex parte Usener*, 391 S.W.2d 735, 736 (Tex. Crim. App. 1965); *see also Ex parte Hammonds*, 230 S.W.2d 820, 821 (Tex. Crim. App. 1950) (declining to decide, in advance of trial, whether agreed facts constituted the crime of rape as charged in complaint; "In Texas, procedure such as demurrer to the evidence, declaratory judgment or pre-trial judgment, in criminal cases, is not recognized.").

of the statute, but asserts that the statute is unconstitutional as applied to his particular facts and circumstances.[19] Because a statute may be valid as applied to one set of facts and invalid as applied to a different set of facts, a litigant must show that, in its operation, the challenged statute was unconstitutionally applied to him; that it may be unconstitutional as to others is not sufficient (or even relevant).[20]

An "as applied" challenge is brought during or after a trial on the merits, for it is only then that the trial judge and reviewing courts have the particular facts and circumstances of the case needed to determine whether the statute or law has been applied in an unconstitutional manner.[21] "'Since [a contention that a statute is unconstitutional as applied] requires a recourse to evidence, it cannot be properly raised by a pretrial motion to quash the charging instrument.'"[22]

In the present case, however, Mr. Green is attempting to bring what he calls an "as applied" challenge to Article 37.071, § 2, in a pretrial motion before any evidence in his case has been heard. His amended motion makes reference to "sufficient risk factors inhering in the application of Texas' capital punishment statute that the statute creates a constitutionally

[19] *See Texas Workers' Compensation Com'n v. Garcia*, 893 S.W.2d at 518 n.16.

[20] *See Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992) (op. on reh'g); *Parent v. State*, 621 S.W.2d 796, 797 (Tex. Crim. App. 1981).

[21] *See Gillenwaters*, 205 S.W.3d at 536-37 (noting that trial court properly overruled pretrial motion to quash, but that defendant renewed "as applied" challenge both at the end of all evidence and in a motion for new trial).

[22] *Id.* at n.4 (quoting G. Dix & R. Dawson, 43A Tex. Prac. Series: *Criminal Practice and Procedure* § 42.254 (Supp. 2005)).

unacceptable risk of convicting and sentencing an innocent person to death."[23]  He then sets

out various subsections of his general discussion:

"A.    The number of exonerations in capital cases nationwide is steadily
        increasing;

"B.    Exonerations demonstrate there is a risk that innocent people have been
        executed, and that post-trial review cannot be trusted to catch all errors;

"C.    State governors and legislatures, Supreme Court Justices, and American Law
        Institute have acknowledged the risk of executing innocent people;

"D.    Five factors that produce a risk of wrongful conviction are peculiar to capital
        cases;
        1.    Crime clearance rates and pressure on the police;
        2.    Publicity;
        3.    Death qualification of prospective jurors;
        4.    Fear of the death penalty in defendants and their defense team;
        5.    The tendency of capital juries to consider punishment prior to
              determining guilt;

"E.    Seven factors based in Texas' criminal procedure exacerbate the risks of
        wrongful convictions created by the risk factors peculiar to capital cases;
        1.    Inadequate compensation of jurors results in jury pools that are not
              representative of a fair cross section of the community, diminishing the
              protection afforded by the jury against overzealous prosecution;
        2.    Eyewitness identification testimony is introduced which has not been
              obtained through the use of safeguards established to reduce the risk of
              mistaken identification;
        3.    Confessions are introduced without having been obtained through the
              use of procedures necessary to guard against false confession;
        4.    Perjured testimony by informants who are paid or provided leniency in
              their own cases is often introduced;
        5.    The prosecution's introduction of forensic evidence appears to lend
              certainty to important forensic issues which is not justified and is
              misleading;
        6.    Pretrial discovery procedures are inadequate to safeguard against the

---

[23] Amended Motion at 6.

suppression of *Brady* evidence and the introduction of unreliable evidence;

7.     Juries are selected in a racially discriminatory manner, thereby reducing the thoroughness and accuracy of their deliberations;

"F.     Two factors that are supposed to safeguard against the risk of wrongful convictions are so flawed that they contribute to the risk of wrongful convictions being sustained;

1.     State habeas proceedings;

2.     Clemency proceedings;

"G.     Numerous Texas officials and agencies have expressed concern about many of the risk factors discussed here but no one has yet taken any remedial action;

1.     Texas Forensic Commission;

2.     Governor Perry's Criminal Justice Advisory Council;

3.     Texas Criminal Justice Integrity Unit;

4.     Timothy Cole Advisory Panel on Wrongful Convictions."

In a final section, Mr. Green then asserts that "the risk of wrongful conviction in Texas is epitomized by the tale of two arson-murder cases." And he proceeds to set out the facts of those particular cases in detail. Of course, there is no allegation of any arson in Mr. Green's indictment, so the relevancy of information concerning other defendants in other, wholly unrelated proceedings seems highly dubious for purposes of the present case.

These are all very important issues and they certainly deserve careful consideration in an appropriate forum. But Mr. Green has failed to explain their relevance in the pretrial setting except to say that he has pled not guilty and is claiming that he is innocent of the charge, and therefore he is at risk of being wrongfully convicted and wrongfully sentenced

to death.[24] But that is an entirely hypothetical issue. He has not been convicted of anything. He is asking Texas trial and appellate courts to entertain a purely hypothetical claim and make an advisory ruling in a case that has not been litigated to any final resolution. Neither trial nor appellate courts may entertain hypothetical claims. Nor is it sufficient to show that a statute *may* operate unconstitutionally against the challenger or someone in a similar position in another case.[25] Courts must evaluate the statute as it has been applied in practice against the particular challenger.[26] And we have explicitly held that the risk that some other possibly innocent person might be executed does not violate a third person's–the defendant's–due process rights, nor does it violate the Eighth Amendment.[27]

The evidence presented during the two days of pretrial hearings in this case followed

---

[24] In *House v. Bell*, 547 U.S. 518, 554-55 (2006), the Supreme Court stated that any death-sentenced defendant who brings a claim of actual innocence must rely upon evidence of his own actual innocence, not someone else's. Mr. Green fails to mention, much less distinguish, this discussion by the United States Supreme Court.

[25] *Tex. Workers' Com. Com'n v. Tex. Mun. League Intergovernmental Risk Pool*, 38 S.W.3d 591, 600 (Tex. App.–Austin 2000), *aff'd*, 74 S.W.3d 377 (Tex. 2002).

[26] *Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Com. Com'n.*, 74 S.W.3d 377, 381 (Tex. 2002); *see also Combs v. STP Nuclear Operating Co.*, 239 S.W.3d 264, 272 n.8 (Tex. App–Austin 2007, pet. denied) ("a party making an as-applied challenge need only show that the statute is unconstitutional because of the manner in which it was applied in a particular case.").

[27] *Paredes v. State*, 129 S.W.3d 530, 540 (Tex. Crim. App. 2004); *Scheanette v. State,* 144 S.W.3d 503, 505-06 (Tex. Crim. App. 2004) (rejecting defendant's claim that Article 37.071 violated the Eighth Amendment "because it leads the State to execute an unacceptable number of innocent defendants" as defendant failed "to demonstrate that *his* due process rights or *his* right to be free from cruel or unusual punishment have been violated by application of our death-penalty statute.").

the general outline of Mr. Green's pleadings.  That is, the testimony related to exonerations across the United States, factors that applied to those nation-wide exonerations, and data concerning exonerees in both capital and non-capital cases.  Much, if not most, of this testimony related to other jurisdictions, and the factors that these witnesses discussed were not particular to Texas and sometimes wholly irrelevant to the Texas statutory scheme.

Two of Mr. Green's witnesses were defense investigators who testified to what they believed were some of the operative facts concerning the underlying capital-murder charge against Mr. Green.  They said that the case involved an armed robbery and the shooting of two Vietnamese women.  They testified that the State's case would presumably involve eyewitness identification testimony, fingerprint evidence, and the testimony of informants.  But we do not know this as the trial has not yet begun and the State has not yet had an opportunity to present its evidence.  If the State does present eyewitness testimony, fingerprint evidence, and testimony from informants, Mr. Green would presumably be entitled to rebut the accuracy and adequacy of that testimony as any defendant in any criminal case is entitled to do.

In sum, Mr. Green appears to seek a pretrial ruling from the trial court judge that the State is not entitled to proceed with its capital-murder indictment in this case because it is within the realm of possibility that Mr. Green could be wrongfully convicted and wrongfully sentenced to death if convicted.  The question before us is whether Mr. Green is entitled, under Texas law, to a pretrial hearing and a pretrial ruling that would deprive the State of the

opportunity to try its capital case and seek the death penalty against Mr. Green.  Conversely, is the State entitled to mandamus or prohibition relief to prevent such a pretrial hearing and pretrial ruling?

**B.     No Adequate Remedy at Law**

The State asserts that, if the trial judge should grant Mr. Green's motion and prevent the State from trying him for capital murder and seeking the death penalty, it has no adequate remedy at law to correct what it contends is a legally erroneous and unauthorized procedure and advisory ruling.  It cannot appeal such a ruling because there is no statutory provision to allow the State to appeal such a pretrial advisory ruling.  Mr. Green, on the other hand, contends that the State could appeal because the effect of the trial judge's ruling would be to dismiss the capital-murder indictment or some portion thereof.

The State's right to appeal is set out in Article 44.01.[28]  That statute permits the State to appeal an order of a trial court in a criminal case if the order dismisses an indictment or any portion of an indictment, arrests or modifies a judgment, grants a new trial, sustains a claim of former jeopardy, grants a motion to suppress evidence, is issued for forensic DNA evidence, or pronounces an illegal sentence.[29]  The only statutory provision that arguably could apply to the present situation is an order that dismisses any portion of an indictment. But a capital-murder indictment when the State seeks the death penalty reads exactly the

---

[28] TEX. CODE CRIM. PROC. art. 44.01.

[29] *Id.*

same as a capital-murder indictment when the State does not seek the death penalty.  That is, the present indictment, like all capital-murder indictments, simply sets out the elements of capital murder under Section 19.03 of the Texas Penal Code.  The indictment in the present case reads:

> The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, John Edward Green, Jr., hereafter styled the Defendant, heretofore on or about June 8, 2008, did then and there unlawfully, while in the course of committing and attempting to commit the ROBBERY of THIEN HUONG NGUYEN aka TINA VO, intentionally cause the death of THIEN HUONG NGUYEN aka TINA VO, by SHOOTING  THIEN HUONG NGUYEN aka TINA VO with a deadly weapon, namely, A FIREARM.

Mr. Green does not specify what portion, if any, of this indictment, he seeks to dismiss.  Even if the State did not seek the death penalty in this case, the indictment would read precisely as it does.  Supposing that the trial judge granted Mr. Green's motion, there is nothing about the indictment that he could, or should, eliminate.

In *Morgan v. State*,[30] this Court dealt with a very similar situation. In that case, the State filed a pretrial motion asking the trial judge to rule that its DWI information, which contained an enhancement paragraph alleging a prior DWI conviction, charged a Class A misdemeanor.[31]  The defense aptly noted that the State's motion was premature; it was not entitled to any such pretrial ruling because it dealt only with "a determination on a

---

[30] 160 S.W.3d 1 (Tex. Crim. App. 2004).

[31] *Id.* at 2.  Apparently, the trial judge had, in previous, unrelated cases, held that this type of information alleged only a Class B misdemeanor.  *Id.*

punishment issue."[32]  Nonetheless, the trial judge made an advisory ruling that, if the defendant were convicted, the punishment range would be for a Class B, not a Class A, misdemeanor.[33]  The State attempted to appeal, and the court of appeals accepted jurisdiction, but we concluded that the State was seeking an impermissible interlocutory appeal.[34]  The trial judge's ruling did not affect the face of the indictment, it merely advised how he intended to proceed at punishment if the State obtained a conviction.[35]  We noted that "the prosecution would proceed regardless of the trial court's ruling."  Thus, the State was attempting an interlocutory appeal, and, except for the appeal of a motion to suppress evidence under certain circumstances, such interlocutory appeals are not statutorily permitted under Article 44.01.[36]

In this case, it is the defense seeking a pretrial ruling on a possible punishment issue. Here, as in *Morgan*, the face of the indictment would not be affected by any pretrial ruling. Thus, here, as in *Morgan*, the State could not appeal any such pretrial advisory ruling under Article 44.01.

Mr. Green argues that the State could appeal the trial judge's pretrial ruling in this

---

[32] *Id.*

[33] *Id.*

[34] *Id.* at 5.

[35] *Id.* at 4 ("The order does not force an alteration of the information before trial can proceed. Instead, it forces the State to alter the information before trial can proceed in the manner in which the State chooses.").

[36] *Id.* at 4-5.

case under the "spirit" of Article 44.01 because it is "tantamount" to dismissing an indictment. This is a position that we rejected in *State v. Patrick*,[37] in which we held that the State could not appeal the trial court's non-statutory DNA order. "Although the State argues that permitting an appeal of the trial court's DNA order is consistent with the spirit of Article 44.01, the State does not claim that Article 44.01 specifically authorizes its appeal, and we find nothing in that article authorizing an appeal here."[38] Although we held that the State could not appeal such an order, it was entitled to mandamus relief because it had no adequate remedy at law and it had a clear and indisputable right to relief.[39] The same was true in *State ex rel. Rosenthal v. Poe*,[40] in which we held that the State had no right to appeal the trial judge's pretrial ruling prospectively allowing a television camera in the jury deliberation room, but the State was entitled to mandamus relief because it had an indisputable right to relief.[41] Article 44.01 does not have penumbras or "spirits." The statute either does or does not specifically authorize a State's appeal. It does not authorize the State to appeal from a pretrial ruling on a possible punishment issue that fails to dismiss any part of the actual

---

[37] 86 S.W.3d 592 (Tex. Crim. App. 2002).

[38] *Id.* at 594.

[39] *Id.* at 594-95.

[40] 98 S.W.3d 194 (Tex. Crim. App. 2003).

[41] *Id.* at 200 (holding that Article 36.22 provides that "[n]o person shall be permitted to be with a jury while it is deliberating," and thus it prohibits any camera in the jury-deliberation room).

indictment.[42]

Mr. Green also argues that Article 44.01 should be construed to include the State's right to appeal a pretrial ruling that prohibits the State from seeking the death penalty in a capital murder case because several federal courts have construed the federal statute concerning government appeals to permit the appeal of orders in which a district court has stricken a death-penalty notice. He cites, *inter alia*, *United States v. Bass*,[43] in which the Sixth Circuit held that the government could appeal the district court's pre-trial order dismissing the government's death-penalty notice based upon its refusal to provide certain discovery to the defendant concerning his claim of selective prosecution.[44] The Sixth Circuit stated that it had jurisdiction under 18 U.S.C. § 3731 over final pretrial discovery orders and thus it could entertain the government's appeal of a pretrial discovery order.[45] Indeed, in

---

[42] *Morgan*, 160 S.W.3d at 5.

[43] 266 F.3d 532 (6th Cir. 2001), *rev'd on other grounds*, 536 U.S. 862 (2002).

[44] *Id.* at 535.

[45] *Id.* at 535-36. Mr. Green also cites *United States v. Acosta-Martinez*, 252 F.3d 13, 16-18 (1st Cir. 2001), which had held that the government could appeal the district court's ruling striking its notice to seek the death penalty or, alternatively, the government was entitled to mandamus relief when the district court had erroneously held that the federal death-penalty act did not apply to capital prosecutions in Puerto Rico. He also relies on *United States v. Cheely*, 36 F.3d 1439, 1441 & n.1 (9th Cir. 1994), which had held that the government could either seek mandamus relief or appeal under § 3731 from the district court's pretrial ruling suppressing evidence and striking the government's notice to seek the death penalty. In *Cheely*, the Ninth Circuit struck down, on Eighth Amendment facial grounds, the federal mail-bomb statutes that authorized the death penalty "for persons guilty of no more than involuntary manslaughter." *Id.* at 1443. In another case that Mr. Green cites, *United States v. Woolard*, 981 F.2d 756, 757 (5th Cir. 1993), the Fifth Circuit stated that it did not need to consider mandamus because, under the Supreme Court's holding in *United States v. Wilson*, 420 U.S. 332, 337 (1975), the government

*United States v. Wilson,*[46] the United States Supreme Court held that, in enacting 18 U.S.C. § 3731, Congress intended to remove all barriers to a government appeal in a criminal case other than those imposed by the Constitution.[47] We have never said the same of the Texas statute governing appeals by the State.[48] Instead, in Texas, appeals by either the State or the defendant in a criminal case are permitted only when they are specifically authorized by statute.[49] In Texas, "[t]he standard for determining jurisdiction [of an appellate court] is not whether the appeal is precluded by law, but whether the appeal is authorized by law."[50]

---

could appeal the trial judge's pretrial ruling holding that the federal statute providing for death penalty in connection with killing of federal official was facially unconstitutional because it did not provide for a sentencing jury to consider all evidence tending to mitigate moral culpability and militate against sentence of death, as required by *Furman*. These three cases involved facial constitutional attacks upon a federal statute; they did not involve "as applied" challenges to the statute.

[46] 420 U.S. 332 (1975).

[47] *Id.* at 337-39.

[48] Indeed, we said the reverse in *Morgan*. We have stated that we construe art. 44.01 liberally, but that is in the context of construing the explicit provisions of the statute. *See Medrano v. State*, 67 S.W.3d 892, 896 (Tex. Crim. App. 2002); *State v. Moreno,* 807 S.W.2d 327, 332 (Tex. Crim. App.1991).

[49] *See, e.g., Apolinar v. State*, 820 S.W.2d 792, 794 (Tex. Crim. App. 1991) ("The courts of appeals do not have jurisdiction to review interlocutory orders unless that jurisdiction has been expressly granted by law."); *Lyon v. State*, 872 S.W.2d 732, 734 (Tex. Crim. App. 1994) ("The right to appeal a criminal conviction is a substantive right solely within the province of the Legislature."); *Ex parte Spring*, 586 S.W.2d 482, 485-86 (Tex. Crim. App. 1978) ("The right to appeal in a criminal case is a statutory right and the jurisdiction of Court of Criminal Appeals is subject to such exceptions and limitations as may be prescribed by law.") (internal citation omitted).

[50] *Abbott v. State*, 271 S.W.3d 694, 696-97 (Tex. Crim. App. 2008) (holding that court of appeals erred in stating that, because there was no "statute or rule precluding" the appeal, it had

Because Article 44.01 does not provide for an appeal by the State of an interlocutory pretrial ruling preventing the State from pursuing a capital-murder conviction and sentence of death, the State has no adequate remedy at law concerning the resolution of Mr. Green's amended motion. A writ of mandamus or prohibition is, therefore, an appropriate vehicle to review the propriety of Mr. Green's pretrial motion and the trial judge's evidentiary hearing.

## C. A Clear Right to Relief

Mr. Green argues that the State cannot prosecute him for capital murder and seek the death penalty in this case because the application of Article 37.071, § 2, "has created a substantial risk that innocent people have been, and will be convicted and executed." Mr. Green asserts that he is innocent, but apparently assumes that, if he goes to trial, he would be both wrongfully convicted and sentenced to death. These assumptions are simply not warranted before a jury has considered the evidence in the present case and rendered a verdict. As noted above, an "as applied" challenge to the constitutionality of a statute requires the challenger to demonstrate that the statute has operated unconstitutionally when applied to his particular circumstances. Because a statute may be valid as applied to one set of facts and invalid as applied to another, it is incumbent upon the challenger to first show

---

jurisdiction over defendant's appeal from the trial court's post-judgment order denying his time-credit motion); *Staley v. State*, 233 S.W.3d 337, 338 (Tex. Crim. App. 2007) (defendant's appeal of order compelling him to take anti-psychotic medicine not permitted; "Appellant does not cite, nor have we found, any constitutional or statutory provision or any rule that would authorize this appeal from the trial court's interlocutory order.").

that, in its operation, the statute is unconstitutional as to him in his situation; that it may be unconstitutional as to others is not sufficient.[51]   Therefore, any court considering an "as applied" challenge to a statute must look at the challenger's conduct alone to determine whether the statute operated unconstitutionally.[52]

All courts must heed the most recent pronouncement by the United States Supreme Court in *Baze v. Rees*: "We begin with the principle, settled by *Gregg*, that capital punishment is constitutional. . . .  It necessarily follows that there must be a means of carrying it out."[53] In *Baze*, the Supreme Court held that, in the context of the Eighth Amendment, a challenged execution procedure must create a "substantial risk of serious harm," or an "objectively intolerable risk of harm" before it could rise to a constitutional violation.  The level of risk that is "objectively intolerable" would normally be decided by the public, acting through its legislative enactments; a "possible" or "potential" risk does not suffice to violate the federal constitution.[54]

Mr. Green asserts that no jury can decide whether he is guilty of capital murder and subject to the death penalty because it is possible that an innocent person, perhaps in Texas, perhaps in some other jurisdiction, has been wrongly executed and therefore Mr. Green is

---

[51] *See* notes 19-22 *supra*.

[52] *See id*. and notes 25-27 *supra*.

[53] *Baze v. Rees*, 553 U.S. 35, 47 (2008) (citing *Gregg v. Georgia*, 428 U.S. 153, 169, 177-80, 187 (1976)).

[54] *See id.* (constitution does not require avoidance of all risk or even require the "least risk").

subject to the possibility of being wrongfully convicted and wrongfully executed. The Supreme Court has never required human infallibility in its criminal laws or procedures. In *Herrera v. Collins*,[55] a death-penalty case arising out of Texas, the Supreme Court reaffirmed that "[d]ue process does not require every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person. To conclude otherwise would all but paralyze our system for enforcement of the criminal law."[56] In *Herrera* the Supreme Court recognized that the constitutional protections in the Texas capital-punishment statutory scheme "have the effect of ensuring against the risk of convicting an innocent person."[57] Of course, to the extent that the statutory scheme has not worked fairly or accurately in a particular case, a person who claims that *he* has been wrongly convicted or sentenced has the right to multiple layers of appellate and collateral review in multiple courts. But one does not put the cart before the horse: a defendant has no claim of wrongful conviction or wrongful sentencing before he has even gone to trial.

Even more recently, the Supreme Court has rebuffed a challenge to the death-penalty laws of Kansas based on an argument not dissimilar to that of Mr. Green. In *Kansas v. Marsh*,[58] the Supreme Court reversed a decision by the Kansas Supreme Court which had

---

[55] 506 U.S. 390 (1993).

[56] *Id.* at 399 (quoting *Patterson v. New York*, 432 U.S. 197, 208 (1977)).

[57] *Id.* at 398-99.

[58] 548 U.S. 163 (2006).

held that the death-penalty statute in Kansas violated the Eighth and Fourteenth Amendments because it required imposition of the death penalty if the jury unanimously found that the statutory aggravating circumstances were not outweighed by mitigating circumstances. [59] The United States Supreme Court disagreed. The Kansas death-penalty statute was constitutional because it rationally narrowed the class of death-eligible defendants; it allowed imposition of the death penalty only if (1) the defendant was convicted of capital murder; (2) the state could prove at a separate sentencing hearing the existence of one or more aggravating circumstances; (3) the jury was permitted to consider any mitigating evidence relevant to the sentencing determination; and (4) the state proved beyond a reasonable doubt that the aggravating circumstances were not outweighed by mitigating circumstances. [60] In *Marsh*, the Supreme Court once again pointed approvingly to the Texas death-penalty statutory scheme as a constitutionally permissible one because it "1) rationally narrow[s] the class of death-eligible defendants; and (2) permit[s] a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime. So long as a state system satisfies these requirements, our precedents establish that a State enjoys a range of discretion in imposing the death penalty, including the manner in which aggravating and mitigating circumstances

---

[59] *Id.* at 171-72.

[60] *Id.* at 173.

are to be weighed."[61]

The majority in *Marsh* rejected the very same contention that Mr. Green makes in this case, namely that because some death-row inmates have been exonerated by DNA evidence or because it is possible that some innocent person may have been wrongfully executed a state's statutory death-penalty scheme may be unconstitutional:

> [T]he availability of DNA testing, and the questions it might raise about the accuracy of guilt-phase determinations in capital cases, is simply irrelevant to the question before the Court today, namely, the constitutionality of Kansas' capital *sentencing* system. Accordingly, the accuracy of the dissent's factual claim that DNA testing has established the "innocence" of numerous convicted persons under death sentences–and the incendiary debate it invokes–is beyond the scope of this opinion.[62]

The Supreme Court then went on to explain why it does not–and by implication, other courts do not–determine the constitutionality of the death penalty on this basis:

> [These] criticisms against the death penalty are ultimately a call for resolving all legal disputes in capital cases by adopting the outcome that makes the death penalty more difficult to impose. While such a bright-line rule may be easily applied, it has no basis in law. Indeed, the logical consequence of the dissent's argument is that the death penalty can only be just in a system that does not permit error. Because the criminal justice system does not operate perfectly, abolition of the death penalty is the only answer to the moral dilemma the dissent poses. This Court, however, does not sit as a moral authority. Our precedents do not prohibit the States from authorizing the death penalty, even in our imperfect system. And those precedents do not empower this Court to chip away at the States' prerogatives to do so on the grounds the dissent

---

[61] *Id.* at 173-74 (citing *Franklin v. Lynaugh*, 487 U.S. 164, 179 (1988) (upholding the constitutionality of the Texas special-issues framework)).

[62] *Id.* at 180.

invokes today.[63]

Quite simply, the criticisms concerning the risk or potential for a wrongful execution under any legislatively enacted death-penalty scheme raised by the dissent in *Marsh* and by Mr. Green are important moral and public policy questions suitable for intense and open debate by legislative policy makers, not by courts considering only the constitutionality of a legal system, not its absolute perfection.[64] Neither trial judges nor judges on this Court sit as a moral authority over the appropriateness of the death penalty. We can determine only whether it has been constitutionally imposed by a jury after a specific conviction and

---

[63] *Id.* at 181.

[64] *See, e.g., id.* at 186 (Scalia, J., concurring). Justice Scalia noted that judges are not free to impose their personal policy views or morality in lieu of the policy choices and decisions of the democratically elected legislatures, even when it comes to the contentious debate concerning the morality of the death penalty.

> As a general rule, I do not think it appropriate for judges to heap either praise or censure upon a legislative measure that comes before them, lest it be thought that their validation, invalidation, or interpretation of it is driven by their desire to expand or constrict what they personally approve or disapprove as a matter of policy. In the present case, for example, people might leap to the conclusion that the dissenters' views on whether Kansas's equipoise rule is constitutional are determined by their personal disapproval of an institution that has been democratically adopted by 38 States and the United States. But of course that requires no leap; just a willingness to take the dissenters at their word. For as I have described, the dissenters' very argument is that imposition of the death penalty should be minimized by invalidation of the equipoise rule because it is a bad, "risk[y]," and "hazard [ous]" idea, *ibid.* A broader conclusion that people should derive, however (and I would not consider this much of a leap either), is that the dissenters' encumbering of the death penalty in *other* cases, with unwarranted restrictions neither contained in the text of the Constitution nor reflected in two centuries of practice under it, will be the product of their policy views–views not shared by the vast majority of the American people.

*Id.*

sentence.

And that brings us back to the ostensible purpose of Mr. Green's evidentiary hearing. He is attempting to offer generalized evidence and data about other defendants in other cases unrelated to the specific evidence of his guilt or innocence or his appropriate sentence, if any, should he be found guilty of capital murder. This evidence is, as the United States Supreme Court stated, "irrelevant."[65]

We must take Mr. Green at his word that he is mounting an "as applied" challenge to the operation of the Texas capital-murder statutes in his specific and particular case. That challenge can only be made when and if he has been convicted and sentenced to death. And it can be made only upon a showing that the Texas sentencing scheme has operated in an unconstitutional manner to deprive *him* of a constitutionally fair trial. A trial on the merits is "the main event" in our American system of justice in which the prosecution and defense present evidence and do battle to reach a presumptively accurate and reliable result in each particular case.[66] At that trial on the merits "[i]f a criminal defendant thinks that an action of the state trial court is about to deprive him of a federal constitutional right there is every reason for his following state procedure in making known his objection."[67] Mr. Green has cited no state law or state procedure that permits a pretrial evidentiary hearing to determine

---

[65] *Id.* at 180.

[66] *See Wainwright v. Sykes*, 433 U.S. 72, 90 (1977).

[67] *Id.*

the "as applied" constitutionality of a state penal law or state criminal procedural statute, nor are we able to find one.  He is, in truth, seeking a declaratory judgment.  Mr. Green argues that the effect of his motion, if successful, is "tantamount to dismissing an indictment or any portion of an indictment."  But Texas law does not permit a defendant in a criminal case to attack the sufficiency or adequacy of an indictment by evidence beyond the four-corners of that indictment.[68]

Because there is no basis under Texas law to conduct a pretrial evidentiary hearing to determine the "as applied" constitutionality of a state penal or criminal procedural statute, we conclude that the trial judge does not have legal authority to conduct any such pretrial evidentiary hearing and make any such pretrial declaratory judgment.  He is acting beyond the scope of his lawful authority. Therefore, the State has demonstrated a clear right to relief. We conditionally grant mandamus and prohibition relief and, if he does not do so himself, will order the trial judge to dismiss Mr. Green's "Amended Motion to Declare Article 37.071, § 2 of the Texas Code of Criminal Procedure Unconstitutional As Applied" as requesting an unauthorized declaratory judgment.

Delivered: January 12, 2011
Publish

---

[68] "An indictment must be facially tested by itself under the law as a pleading; it can neither be supported nor defeated as such by what evidence is presented at trial. *A fortiori,* it can not be supported or defeated by evidence presented at pretrial. . . . [I]n a pretrial setting there is no constitutional or statutory authority for an accused to raise and for a trial court to determine sufficiency of evidence to support or defeat an alleged element of an offense." *State v. Rosenbaum,* 910 S.W.2d 934, 948 (Tex. Crim. App. 1994) (op. on reh'g).