

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. WR-82,265-01 & WR-82,265-02

### IN RE TYRONE ALLEN, Relator

### ON PETITIONS FOR WRITS OF MANDAMUS
### TO THE FIFTH COURT OF APPEALS
### CAUSE NOS. 05-14-01167-CV AND 05-14-01168-CV
### DALLAS COUNTY

NEWELL, J., filed a dissenting opinion in which KELLER, P.J., and ALCALA, J., joined.

### O P I N I O N

The majority conditionally grants mandamus relief to Relator Tyrone Allen thereby paving the way for a pre-trial determination of whether he is exempt from the death penalty due to his intellectual disability.[1]  According to the majority, the uncertainty surrounding the

---

[1]I am not suggesting that the majority is advocating for this procedure.  Nevertheless, the effect of the majority's decision opens the door for the exact procedure that the majority seems to decry.  And the effect of this ruling will be felt not only in this case, but in other cases as well.  I share the majority's hope that the impact of this case might encourage the legislature to provide much needed guidance on how the State should address intellectual-disability claims in death-penalty cases.  But I reluctantly dissent because I am unwilling to abandon our precedent regardless of how much I might want to spur the legislature to action.

determination of intellectual disabilities in the context of a death-penalty case prevents labeling the trial court's actions a ministerial duty. While I share the majority's frustration with the lack of legislative guidance on this subject, I reluctantly dissent from this holding. I believe the majority's focus upon the question of whether the determination is limited to a jury overlooks whether such a determination is timely prior to conviction. On that question, the law is considerably more settled and clearly prohibits a pre-trial determination of a sentencing issue prior to conviction.

The majority comprehensively sets out the case law surrounding the determination of intellectual disability. In *Briseno*, this Court fashioned what were supposed to be temporary guidelines on determining intellectual disability, but even as it did, the Court carefully noted that *Atkins* does not require a jury determination of intellectual disability. *Ex parte Briseno*, 135 S.W.3d 1, 9-10 (Tex. Crim. App. 2004). This Court observed in *Hunter v. State* that the United States Supreme Court had even overturned the Ninth Circuit's order commanding Arizona courts to conduct a jury trial to resolve intellectual-disability claims. *Hunter v. State*, 243 S.W.3d 664, 672 (Tex. Crim. App. 2007) (citing *Schriro v. Smith*, 546 U.S. 6, 7-8 (2005)).[2] And while this Court has endorsed a jury finding on intellectual disability, this

---

[2]In *Schriro,* the United States Supreme Court held that the Ninth Circuit exceeded its habeas jurisdiction by demanding that Arizona courts conduct a jury trial to resolve habeas corpus claims regarding intellectual disability when Arizona had not had the chance to implement its own chosen procedures. *Schriro*, 546 U.S. at 7-8. *Schriro* stands more for the proposition that a federal court cannot interfere with a state's ability to promulgate procedures for addressing intellectual-disability claims than it does for the idea that a trial court has discretion to consider such claims prior to trial. Moreover, the United States Supreme Court has recently granted certiorari to determine whether *Ring v. Arizona* requires a jury determination of

Court has not held that it is constitutionally required. *See, e.g., Williams v. State*, 270 S.W.3d 112, 132 (Tex. Crim. App. 2008). The majority is exactly right that this Court has repeatedly left the door open for the legislature to act, and our stop-gap measures should not be mistaken for constitutional requirements.

But this lack of legislative guidance does not necessarily translate into unfettered judicial discretion. It is well settled that courts lack the authority to address claims that are not ripe for review. "At the time a lawsuit is filed, ripeness asks whether the facts have developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Patterson v. Planned Parenthood of Houston and Southeast Texas, Inc.*, 971 S.W.2d 439, 442 (Tex. 1998) (citing 13A WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE, § 3532.1, at 130 (2d ed. 1984)). Though this Court has not directly quoted Professor Wright, we have repeatedly rejected claims that were not ripe for review. *See, e.g., Ex parte Smith*, 185 S.W.3d 887, 893 (Tex. Crim. App. 2006) (rejecting an *in pari materia* claim because it was not ripe for review); *Ex parte Weise*, 55 S.W.3d 617, 621 (Tex. Crim. App. 2001) (declining to address whether the illegal-dumping statute required a culpable mental state prior to trial because the issue was not ripe). The courts of this state are not empowered to give advisory opinions; this prohibition extends to cases that are not ripe. *Patterson*, 971 S.W.3d at 443. Yet the majority would authorize the trial court to enter

---

intellectual disability in a case in which the defendant was deprived of that jury determination. *See Hurst v. State*, 147 So. 3d. 435 (Fla. 2014), *cert. granted*, 83 U.S.L.W. 3717 (U.S. Mar. 9, 2015) (No. 14-7505). But the majority's point is well-taken; *Atkins* does not explicitly require a jury determination of intellectual disability. *Briseno*, 135 S.W.3d at 10.

an advisory opinion by allowing the trial court in this case to prematurely adjudicate Relator's intellectual-disability claim before he has been convicted of capital murder.

This Court has already considered and rejected a claim that Jonathan Bruce Reed was entitled to a pre-trial hearing to determine whether a lengthy delay in obtaining post-conviction relief had rendered mitigation evidence unavailable for his death-penalty retrial. *State ex rel. Watkins v. Creuzot*, 352 S.W.3d 493, 502-06 (Tex. Crim. App. 2011). The State argued that the trial court could not preclude the death penalty for a death-penalty offense based upon the contingency that the defendant would be found guilty of capital murder, that a jury would find beyond a reasonable doubt that he would still be a future danger, and that a hypothetical jury would not answer the mitigation question in his favor because some witnesses and records were unavailable. *Id.* at 502. A majority of this Court agreed with the State, holding:

> The issue of the adequacy of Reed's mitigation case is not "fit" for judicial decision before it is presented. Here, a capital-murder defendant is seeking a pretrial declaratory judgment that any mitigation case that he might mount would necessarily be inadequate and therefore any prospective death sentence would, if it occurred, violate the Eighth Amendment, the Sixth Amendment, and the Due Process Clause. "These assumptions are simply not warranted before a jury has considered the evidence in the present case and rendered a verdict."

*Id*. at 505-06 (quoting *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 916 (Tex. Crim. App. 2011)).

The majority distinguishes *Fine* and *Creuzot* by focusing upon the form of the motion before the trial courts in those cases. But this Court's holdings in those cases did not turn on

the form of the motions. Rather, this Court granted mandamus relief because the real parties-in-interest had not yet been convicted. Regardless of the merit of the claims, the alleged constitutional injury was just as contingent upon future events in those cases as the alleged constitutional injury is in this case.[3]

I believe the same reasoning applies in this case. The United States Supreme Court has held only that the Eighth Amendment prohibits the imposition of the death penalty upon a defendant with intellectual disabilities. *Atkins v. Virginia,* 536 U.S. 304, 321 (2002). Under existing law, it is a sentencing issue. Regardless of whether the determination that a defendant is intellectually disabled can be made by a judge or a jury, holding the hearing on the matter prior to a finding of guilt puts the cart before the horse and results in an advisory opinion. More simply, Allen's claim of intellectual disability is not ripe.

Because I believe allowing the pre-trial evidentiary hearing to consider the adequacy of Allen's intellectual-disability claim is inconsistent with this Court's prior precedent, I respectfully dissent.

Filed: May 13, 2015
Publish

---

[3]It is worthwhile to note that both *Fine* and *Creuzot* were death-penalty cases in which the State had provided notice of its intent to seek the death penalty. Those notices had the same effect upon the nature of those cases as the notice does in this case. And the issues in both *Fine* and *Creuzot* do not appear to be any less remote than the issues in this case. Yet, a majority of this Court still held that mandamus relief was appropriate in both cases because the relators had not yet been convicted of capital murder.