

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00286-CR

ASHLEY BECKER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Court at Law No. 2
Lubbock County, Texas
Trial Court No. 2019-494,896, Honorable Drue Farmer, Presiding

August 19, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

It is a crime for a member of a "criminal street gang" to carry a handgun while in a car or boat, if he owns or controls those vehicles.[1] Apparently, the same cannot be said of that same "criminal street gang" member carrying it while walking, riding a bike, or even riding a horse. Nor is it true, under the expressed wording of the statute, if he carries the

---

[1]TEX. PENAL CODE ANN. § 46.02(a-1)(2)(C) (West Supp. 2019) (stating that "[a]person commits an offense if the person intentionally, knowingly, or recklessly carries on or about his or her person a handgun in a motor vehicle or watercraft that is owned by the person or under the person's control at any time in which . . . the person is . . . a member of a criminal street gang, as defined by Section 71.01").

firearm while riding in a car or boat owned and controlled by someone else, including a fellow "criminal street gang" member.

How about riding on a motorcycle? The statute refers to carrying the weapon "***in*** a motor vehicle." Like riding Mother Nature's horse, riding a two-wheeled iron one involves being atop or "on" it. Of course, one may scoff at drawing such hyper technical distinctions; but, do not such hyper technical distinctions already exist in a statute that criminalizes possession of a handgun when driving his own car but not while being driven in another person's car or while simply walking on a street.

Let us try another, shall we? What if the State licensed that supposed "criminal street gang" member to carry the firearm? In so licensing the person, logic suggests that it approved of his carrying the weapon. Though not a criminal for purposes of securing a license, the person apparently becomes one simply by sitting in his own car or boat with the item he was licensed to carry.[2]

Those are a few of the mystifying mind teasers revolving around this appeal from an order denying Ashely Becker's pretrial writs of habeas corpus. Yet, Becker was not "in" a motor vehicle but on his motorcycle. Furthermore, his purported status as a "criminal street gang" member allegedly arose upon joining the Bandidos Motorcycle Club. He argued below and here that focusing merely on his membership in the purported "criminal street gang" to prosecute him for carrying a handgun that the State licensed him to carry violated a myriad of his constitutional rights. The trial court disagreed and denied both his facial and "as applied" constitutional attacks levied against § 46.02(a-1) of the

---

[2] *See id.* § 46.15(b)(6)(A), (B) (stating that "Section 46.02 does not apply to a person who . . . is carrying . . . a license issued under Subchapter H, Chapter 411, Government Code, to carry a handgun; and . . . a handgun . . . in a concealed manner; or . . . in a shoulder or belt holster").

Texas Penal Code. We have been afforded the opportunity to consider that decision but forgo it at this time.

*Background*

A stipulation executed by the parties coupled with the arrest report referred to therein revealed the following. A deputy sheriff saw Becker and another atop their motorcycles while stopped on the roadway. They then drove away but at a speed much slower than the posted limit. Both were deemed infractions of the traffic laws and resulted in the deputy stopping them.

At the time, Becker and the other rider wore vests depicting membership in the Bandidos. The latter organization was "confirmed as an 'Outlaw Motorcycle Gang,'" according to the deputy. And, upon approaching "both motorcyclists," he spoke first with Becker who "handed [the deputy] a Texas Driver's License and a Texas License to Carry" a concealed weapon.[3] Upon seeing the license to carry, the deputy asked Becker if he (Becker) possessed a handgun. Becker "advised he had his gun on his hip." That led to the deputy ordering Becker to "place his hands on top of his helmet," at which point the deputy removed "the handgun from [Becker's] belt for officer safety." Becker's carrying the weapon allegedly violated § 46.02(a-1), since the deputy knew "through [his] experience as a police officer that gang members in the state of Texas cannot possess firearms."

*Cognizable Claim*

It has long been clear that a writ of habeas corpus is an extraordinary remedy. *Ex parte Ingram*, 533 S.W.3d 887, 891 (Tex. Crim. App. 2017); *Weise v. State*, 55 S.W.3d

---

[3] The parties stipulated that Becker had a "concealed weapon permit issued by DPS."

3

617, 619 (Tex. Crim. App. 2001). It is reserved for situations where the protection of the applicant's substantive rights or the conservation of judicial resources would be better served by interlocutory review. *Ex parte Ingram*, 533 S.W.3d at 891–92. The extraordinary nature of the remedy may very well be why our highest criminal court in Texas mandates that we first address the cognizability of the underlying claim before doing anything else. *See Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010) (stating that our first order of business is to address whether the claim being asserted via the appeal is even cognizable before turning to its merit).

Cognizability is somewhat of an amorphous concept affected by various factors. *Weise*, 55 S.W.3d at 619–20. For instance, whether resolution of the claim would result in the accused's immediate release is one such factor. *Id.* Another involves the benefit to be gained by the development of a record at trial. *Ex parte Ingram*, 533 S.W.3d at 892. If resolution of the dispute would be aided by that, then pretrial habeas is normally an inappropriate avenue down which to travel. *Id.* The nature or subject matter of the dispute also serves as a factor since "pretrial habeas is not available to . . . construe the meaning and application of the statute defining the offense charged." *Ex parte Ellis*, 309 S.W.3d at 79.

And, though unmentioned in either *Weise* or *Ingram*, we see another factor affecting the present cognizability of a particular dispute. It derives from rulings of our Court of Criminal Appeals. Those rulings direct us to forgo assessing the constitutionality of a statute unless such assessment is "'absolutely necessary to decide the case in which it is raised.'" *Salinas v. State*, 464 S.W.3d 363, 366 (Tex. Crim. App. 2015); *State ex rel.*

4

*Lykos v. Fine*, 330 S.W.3d 904, 909 (Tex. Crim. App. 2011) (quoting *Briggs v. State*, 740 S.W.2d 803, 806–07 (Tex. Crim. App. 1987)).

So, as can be discerned from what we have said, not every dispute presented to us is cognizable. Not every dispute need be entertained via an application for a pretrial writ of habeas corpus or an appeal from an order denying that extraordinary remedy. Indeed, we have the discretion to dismiss such appeals, especially when the underlying legal claim is not cognizable. *See In re O.D.T.*, No. 13-12-00518-CV, 2013 Tex. App. LEXIS 1138, at *4 n.4 (Tex. App.—Corpus Christi Feb. 7, 2013, no pet.) (mem. op., not designated for publication) (noting that an intermediate appellate court has the discretion to dismiss the appeal); *Ex Parte Cross*, 69 S.W.3d 810, 813 (Tex. App.—El Paso 2002, pet. ref'd) (noting the same). And, that is the circumstance here.

Throughout his appellate brief, Becker insinuates his license to carry a handgun into his constitutional claims. His summary of argument illustrates this. There, he posits that: 1) "[u]nder Section 46.02(a-1)(2)(C) . . . the police may arrest any handgun licensee whenever the police consider that licensee to be a member of a 'criminal street gang'"; 2) "[t]he statutes permit police to arrest law-abiding handgun licensees under the condemned rationale of guilt by association, a basis of discrimination forbidden by both the First and Fourteenth Amendments"; 3) "[b]y subjecting all handgun licensees like Appellant to arrest and prosecution, Texas law deprives them of their First and Fourteenth Amendment liberties . . . includ[ing] the right to freely associate, to freely express that association and to freely travel – *and to exercise these freedoms at the same time*" (emphasis in original); 4) "[h]andgun licensees like Appellant also have a Second Amendment right to carry their handgun for defensive purposes"; and, 5) "[t]he source of

5

this constitutional conflagration is found in the statute's plain language explicitly authorizing police to disarm and arrest any handgun licensee if it considers the person to be a member of a 'criminal street gang.'" So, as can be seen, the fabric of his arguments is woven with three intertwining threads, those being § 46.02(a-1), his handgun license, and the particular constitutional right allegedly violated.

Next, one facially challenging the constitutionality of the statute must illustrate that the statute operates unconstitutionally in all of its applications. *Estes v. State*, 546 S.W.3d 691, 697–98 (Tex. Crim. App. 2018); *State ex rel. Lykos* 330 S.W.3d at 904, 908–09. To resolve such challenges, we consider the statute only as written without reference to evidence or facts peculiar to the complainant. *State ex rel. Lykos,* 330 S.W.3d at 908–09. On the other hand, factual circumstances underlying a constitutional attack become relevant in an as-applied challenge. *Id.* at 910; *see Estes v. State*, 546 S.W.3d at 698 (stating that "an 'as-applied' challenge 'requires recourse to evidence'"). There, the litigant endeavors to prove that while it may be constitutional in some setting, the statute is unconstitutional as it relates to his factual situation or circumstances. *State ex rel. Lykos,* 330 S.W.3d at 908–09. Our application of this distinction between facial and as-applied challenges leads us to conclude that Becker's facial challenges actually are as-applied ones.

Becker does not cast his attack upon § 46.02(a-1) by attempting to illustrate its alleged constitutional infirmities in all applications. Rather, his being awarded a handgun license composes part of each argument's fabric. In other words, he does not merely argue that § 46.02(a-1) is unconstitutional in all applications but, rather, it is unconstitutional due to his membership in the Bandidos Motorcycle Club and his

6

ownership of a handgun license.  Moreover, § 46.02(a-1) says nothing about the accused possessing a handgun license.  That makes the latter circumstance extraneous to the statute's face.  So, by interjecting the circumstance of handgun ownership into the mix, Becker converted his facial challenge to one of "as-applied."

Next, as-applied challenges normally are not cognizable via a petition for writ of habeas corpus or an appeal therefrom.  *See, e.g.*, *Ex parte Rivello*, No. 05-19-00676-CR, 2020 Tex. App. LEXIS 1269, at *5 (Tex. App.—Dallas Feb. 13, 2020, no pet.) (mem. op., not designated for publication) (stating that "the court of criminal appeals has recognized only as-applied claims for double jeopardy, bail, and separation-of-powers as allowed exceptions to the general rule that as-applied challenges are not cognizable"); *State v. Malone*, No. 12-17-00074-CR, 2018 Tex. App. LEXIS 3922, at *12 (Tex. App.—Tyler May 31, 2018, pet. ref'd) (not designated for publication) (stating that "an as-applied constitutional challenge to the statute is not cognizable before trial unless the rights underlying the claim would be effectively undermined if not vindicated pretrial, such as the rights involved in double jeopardy and bail claims").  Despite Becker's suggestion otherwise, we conclude that this general prohibition encompasses his contentions, as well for the following reasons.

To reiterate, the statute underlying his prosecution lies within Chapter 46, § 46.02 of the Penal Code.  Elsewhere in the very same chapter of the very same Code lies another provision.  It provides that ***"[s]ection 46.02 does not apply*** to a person who . . . is carrying . . . [both] . . . a license issued under subchapter H, Chapter 411, Government Code, to carry a handgun . . . and . . . a handgun . . . in a concealed manner . . . or . . . in a shoulder or belt holster."  *Id.* § 46.15(b)(6)(A), (B) (emphasis added).  The potential

7

impact of the latter statute upon the State's prosecution of Becker for violating a subpart of § 46.02 is apparent. If § 46.15(b)(6) means what it says, his having a license to carry may well remove him from the teeth of § 46.02(a-1). Should that occur, then there would be no need to analyze the constitutionality of a statute that "does not apply."

We brought this matter to the attention of the parties and asked them to address it via supplemental briefing. They complied. The State told us that consideration of § 46.15 was beyond our ken. So too did it turn to legislative history and rules of statutory construction in effort to explain why § 46.15(b) does not mean what it expressly says when it comes to § 46.02(a-1). Becker also responded, but with equivocation. He seems to suggest that, though we should consider the relationship between the two statutes, § 46.15(b) may not apply to his situation. Both may be right or wrong. Whether they are either, however, evades our determination given the status of the record.

Simply said, whether consideration of Becker's constitutional challenges is absolutely necessary depends upon the construction and application of § 46.15(b)(6). If it applies to his circumstances, then § 46.02(a-1) and its constitutionality may well be irrelevant. If it does not apply, as argued by the State, then the constitutionality of § 46.02(a-1) remains relevant and subject to determination. In turn, our determination of that depends on whether the factual circumstances attendant to Becker's arrest satisfy the elements of § 46.15(b)(6). If they do not, then § 46.15(b)(6) becomes irrelevant. If they do, then it and its relationship to § 46.02(a-1) become ripe for consideration. And, though we know Becker held a license to carry and possessed a handgun, the evidence nonetheless must establish not only that the license was issued "under Subchapter H, Chapter 411, [of the] Government Code" but also that the handgun was concealed or in

a shoulder or belt holster. TEX PENAL CODE ANN. § 46.15(b)(6). Those matters were not clarified or established via the stipulation of evidence proffered the trial court.[4] Until clarified or established, we risk undertaking a legal exercise not yet ripe for completion. Indeed, construing the statute without knowing whether the facts triggering its application exist risks issuance of an advisory opinion purporting to adjudicate the relationship between § 46.15(b)(6) and § 46.02(a-1), and issuing those opinions are beyond our jurisdiction. *See Armstrong v. State*, 805 S.W.2d 791, 794 (Tex. Crim. App. 1991) (stating that Texas courts "are without authority to render advisory opinions"); *Tex. Ass'n of Bus. v. Tex. Air Contr. Bd.,* 852 S.W.2d 440, 444 (Tex. 1993) (defining an advisory opinion as an abstract declaration of the law); *In re Lopez*, 593 S.W.3d 353, 357 (Tex. App.—Tyler 2018, orig. proceeding) (stating the same). Thus, the constitutional dispute before us is one necessitating additional evidentiary development related to the statutes in play. Being one needing such additional development removes it from the realm of cognizability via the procedural device through which it was presented.

Another factor removing it from cognizability at this time concerns what was said in *Ellis*. Again, "pretrial habeas is not available to . . . construe the meaning and application of the statute defining the offense charged." *Ex parte Ellis*, 309 S.W.3d at 79. Implicit in determining whether § 46.15(b) renders § 46.02(a-1)(2)(C) inapplicable is the need to construe the latter statute, too. As illustrated by the State's supplemental briefing, it believes the provision's legislative history requires the statute to be interpreted as exempt from § 46.15(b) despite expressed verbiage otherwise.

---

[4] For instance, the stipulations indicated that the weapon was by his "hip" and removed from his "belt." Whether it was concealed or holstered at the time is unknown, though.

Given what we have been told through *Ellis*, *Salinas*, *Weise*, *Ingram*, given the nature of the legal mechanism through which Becker presents his complaints, given the need to construe two penal provisions, and given the need for additional factual development before any such construction may occur, we deem the issues before us not yet cognizable. And, in exercising the discretion spoken of in *O.D.T.* and *Cross*, we dismiss the appeal.

Brian Quinn
Chief Justice

Do not publish.