

# NUMBER 13-22-00447-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**FADI GEORGES GHANEM,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

### On appeal from the 9th District Court
### of Montgomery County, Texas.

# OPINION

### Before Chief Justice Contreras and Justices Benavides and Tijerina
### Opinion by Chief Justice Contreras

Appellant Fadi Georges Ghanem was convicted of practicing medicine in violation of Subtitle B, Title 3 of the Texas Occupations Code, a third-degree felony. *See* TEX. OCC. CODE ANN. § 165.152. His sentence of ten years' imprisonment was suspended and he was placed on community supervision for seven years. On appeal, Ghanem argues: (1) "the statutes under which [he] was prosecuted are ambiguous and unconstitutionally

vague on their face and as applied" to him; and (2) the trial evidence was insufficient to establish that the facility he operated was a "pain management clinic" under the applicable statutory definition. *See id.* § 168.001(1). We affirm as modified.[1]

## I. BACKGROUND

Chapter 168 of the Texas Occupations Code governs the regulation of pain management clinics. Section 168.101(a) provides that "[a] pain management clinic may not operate in this state unless the clinic is certified under" Chapter 168, *id.* § 168.101(a), and it is a criminal offense to practice medicine in violation of this statute. *See id.* § 165.152(a). For purposes of Chapter 168, "pain management clinic" means "a publicly or privately owned facility for which a majority of patients are issued on a monthly basis a prescription for opioids, benzodiazepines, barbiturates, or carisoprodol, but not including suboxone." *Id.* § 168.001(1). But the chapter "does not apply" to "a clinic owned or operated by a physician who treats patients within the physician's area of specialty and who personally uses other forms of treatment, including surgery, with the issuance of a prescription for a majority of the patients." *Id.* § 168.002(7).

Ghanem, a family physician who has been in private practice for over two decades, was indicted for "intentionally, knowingly, or recklessly operating a pain management clinic" while the clinic was not certified under Chapter 168. *See id.* § 165.152(a). Prior to trial, Ghanem filed a motion to quash the indictment, arguing that occupations code § 168.002(7) is unconstitutionally vague "because the phrase 'personally uses other forms of treatment' is not specifically defined and is not of common understanding." The

---

[1] This appeal was transferred from the Ninth Court of Appeals in Beaumont pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001.

trial court did not explicitly rule on the motion. At trial, the principal dispute was whether the § 168.002(7) exemption applied to Ghanem's practice.

Sangeeta Sinha, Ghanem's office administrator since 2012, testified that, though Ghanem's practice treated patients for a wide variety of ailments, "around 80 percent" of its patients were prescribed controlled pain medications such as those listed in the statute. Most patients were also prescribed non-controlled medications. Sinha said she became concerned that "[o]ur number of patients receiving the controlled medications were high," and she expressed that concern to Ghanem. At one point, she suspected that Ghanem was not checking Prescription Monitoring Program (PMP) records to determine if patients already had prescriptions for controlled medications from other physicians, so she made sure those records were given to him in writing. She said that Ghanem never attempted to have his facility certified as a pain management clinic under Chapter 168 because "[t]hat brings, like, lots of scrutiny." On cross-examination, Sinha denied that Ghanem "ever s[aw] patients that were coming in only for pain medication and would only receive controlled substances from him." And she agreed that Ghanem discharged multiple patients "for not complying with the controlled substance agreement or for testing dirty on a urine test."

According to Sinha and other witnesses, in 2015, Ghanem began operating an "integrated therapy program" called "Hundred Hands Alliance" (HHA) through which patients were provided with alternative services such as meditation, acupuncture, yoga, massage, cupping, herbal remedies, and group counseling. Sinha stated that Ghanem personally brewed herbal tea for patients. Ghanem's former patient, Georgia Carroll, testified that she developed the program along with Ghanem. The program consisted of

3

free weekend and night classes taught by Ghanem which were sometimes held in the lobby of his clinic in The Woodlands. Carroll stated that, in addition to teaching patients about alternative medicine techniques, Ghanem personally performed cupping and acupuncture on certain patients. Sign-in sheets showed that around twenty patients attended two HHA meetings in March of 2019.

Joe Nichols of the Montgomery County District Attorney's office testified that he was tasked with investigating criminal offenses involving prescription drugs. By analyzing PMP data and appointment records, Nichols determined that Ghanem's practice treated 589 patients in March of 2019, and that over 75 percent of those patients were prescribed one of the controlled pain medications listed in § 168.001(1). Detective Kenneth Wakefield of the Montgomery County Sheriff's Office visited Ghanem's practice undercover on May 15, 2019, posing as a prospective patient. He complained of elbow pain resulting from a fictitious car accident which he said occurred "a couple years prior," and he advised Ghanem's staff that he was allergic to codeine, an opioid. According to Wakefield, after a brief physical examination and without ordering any additional diagnostic tests or asking to see any records, Ghanem diagnosed him with asthma and prescribed him Tylenol with codeine, tramadol (another opioid), and carisoprodol (known by the brand name Soma).[2] Wakefield paid $250 in cash.

Mehran Rahbar, M.D., the chief of pain management and chair of the opioid safety committee at the VA Medical Center in Houston, testified as an expert for the State. He stated he was asked to review records, including CPT (Current Procedure Terminology) billing codes and patient files, to determine whether Ghanem used "treatment procedures

---

[2] Wakefield stated that Ghanem also gave him a sample inhaler used for asthma treatment.

4

other than prescribing pain medication" for a majority of his patients. Rahbar opined that the mere act of writing of prescription for a medication not listed in § 168.001(1) does not qualify for the exemption because the treatment—i.e., the actual administration of medicine—is typically "not personally performed" by the physician. However, he agreed that injections of such medications would be "other forms of treatment" which qualify for the exemption, provided they were personally performed by the physician. According to Rahbar's analysis, Ghanem personally performed "other forms of treatment" on only 105 of the 589 patients his practice saw in March of 2019. Therefore, Rahbar opined that Ghanem's practice did not qualify for the § 168.002(7) exemption.

Amy Swanholm, an attorney and manager of the litigation and enforcement support division of the Texas Medical Board (TMB), testified that she is familiar with Chapter 168 of the occupations code and has provided training to physicians concerning the statute. When asked to explain what "personally used other forms of treatment" means in the context of the § 168.002(7) exemption, Swanholm testified:

> Well, so my understanding of the intent of the statute based on the legislative history and, you know, other things is that this statutory exemption from pain management clinic registration was intended to apply to practices where a physician is really doing a lot of other things besides just issuing prescriptions. They are doing injections, they are performing surgery, they are performing other sorts of procedures that address chronic pain, not just issuing a prescription drug to the patient on a monthly basis. . . . And it has to be for a majority of the patients during the time period that we're looking at.[3]

Swanholm explained that "personally used" means that "the physician themselves [sic] is doing the thing," so referrals to other providers would not qualify. She also opined that

---

[3] On cross-examination, Swanholm agreed with defense counsel that "[w]hat you look for to see if this exemption applies is whether the other forms of treatment . . . are performed on more than 50 percent of the patients who receive opioids or the other classes of drugs."

diagnostic testing would not qualify because diagnosis is different from treatment. Swanholm agreed that TMB does not publish rules or other guidance explaining how to apply § 168.002(7)—such as a list of "other forms of treatment" which would or would not qualify under the exemption—because medical standards, including "what treatments are appropriate for pain management," change frequently over time.

When asked whether "other forms of treatment" could include the prescribing of medications other than those listed in the statute, Swanholm replied:

> So, you know, generally what we're looking at is other forms of treatment besides a prescription. It's something that we would probably look at in our audit and consider. But generally if you look at the language of the statute it seems like it[']s designed to other things [sic] besides that prescription that's being issued for chronic pain.

On cross-examination, she conceded that "issuing a prescription, prescribing a drug is a means of treating a patient." Swanholm also agreed on cross-examination that, if TMB sought to revoke Ghanem's medical license on grounds that he operated an uncertified pain management clinic, Ghanem would be entitled to a hearing before the State Office of Administrative Hearings, and in such a proceeding, her opinion as to the construction of the statute would not necessarily be controlling.

Robert Bredt, M.D., TMB's medical director, testified that writing prescriptions for medications not listed in § 168.001(1) does not constitute "personally us[ing] other forms of treatment" for purposes of the § 168.002(7) exemption. On cross-examination, defense counsel produced a transcript showing that, in 2015, Bredt testified in an unrelated administrative proceeding that "adjunctive medication therapy" and "other modalities of medication management like amitriptyline or Elavil or Cymbalta or Neurontin" "would be acceptable to qualify" as an "additional modality of treatment" for the purposes of a different statute. At trial, Bredt stated he was "not certain that [the transcript] is an accurate

6

representation" of his testimony at the administrative proceeding; in any event, he stated it is "not true" that "those prescriptions of other forms of medications" would qualify for the § 168.002(7) exemption. Bredt did not know whether "things such as group therapy" would qualify. He conceded that TMB does not publish rules or other regulations specifying what "forms of treatment" would qualify for the § 168.002(7) exemption, and it does not provide legal advice to individual physicians.

Noor Gajraj, M.D., an anesthesiologist who is board certified in family medicine, testified as an expert for the defense. He stated that he operates a pain management facility which is not required to be certified under Chapter 168 because he "use[s] something other than a prescription," such as epidural injections and hormone replacement, to treat a majority of the patients. *See id.* § 168.002(7). Gajraj opined that Rahbar and Bredt were too restrictive concerning what qualified as "other forms of treatment" for purposes of § 168.002(7). He opined instead that Ghanem's alternative remedies program and his verbal consultations with patients—which Gajraj characterized as "cognitive behavioral therapy"—are also "other forms of treatment" for chronic pain. However, on cross-examination, Gajraj acknowledged that such practices may not qualify for the § 168.002(7) exemption if they were not within the physician's specialty or were not "personally used" by the physician.

After the close of evidence, Ghanem moved for directed verdict on grounds that § 168.002(7) is unconstitutionally vague. The trial court denied the motion. Ghanem was convicted as charged, and this appeal followed.

## II. DISCUSSION

### A. Constitutionality of Statutes

By his first issue, Ghanem argues that §§ 168.001 and 168.002(7) of the occupations code are unconstitutionally vague and ambiguous, both on their face and as applied to him.

### 1. Applicable Law and Standard of Review

The constitutionality of a statute is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). A party may challenge a statute's constitutionality on its face or as applied to that party. A party bringing a "facial" constitutional challenge must show the statute "operates unconstitutionally in all potential applications." *Estes v. State*, 546 S.W.3d 691, 697–98 (Tex. Crim. App. 2018); *see United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). "Conversely, in an as-applied challenge, the claimant . . . asserts that the statute is unconstitutional as applied to his particular facts and circumstances." *Estes*, 546 S.W.3d at 698 (quoting *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011)). "Under either type of challenge, the reviewing court begins with the presumption that the Legislature acted both rationally and validly in enacting the law under review." *Id.*; *Faust v. State*, 491 S.W.3d 733, 743–44 (Tex. Crim. App. 2015); *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002).

"It is a basic principle of due process that a statute is void for vagueness if its prohibitions are not clearly defined." *State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim.

8

App. 2006) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972)). The void-for-vagueness doctrine requires that a penal statute define the criminal offense with "sufficient definiteness that ordinary people can understand" what conduct is prohibited and "in a manner that does not permit arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). "Although a statute is not impermissibly vague because it fails to define words or phrases, it is invalid if it fails to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited." *Holcombe*, 187 S.W.3d at 499 (first citing *Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988); and then citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)); *see Kolender*, 461 U.S. at 358 ("Where the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections."). We scrutinize criminal statutes more strictly than civil statutes because the consequences of imprecision are more severe. *Mills v. Fletcher*, 229 S.W.3d 765, 770 (Tex. App.—San Antonio 2007, no pet.); *Zaborac v. Tex. Dep't of Pub. Safety*, 168 S.W.3d 222, 225 (Tex. App.—Fort Worth 2005, no pet.); *see Barenblatt v. United States*, 360 U.S. 109, 137 (1959) (Black, J., dissenting) ("[T]he standard of certainty required in criminal statutes is more exacting than in noncriminal statutes.").

Where, as here, the statute does not purport to restrict speech based upon its content, the burden "rests upon the person challenging the statute to establish its unconstitutionality." *Ex parte Lo*, 424 S.W.3d at 15. When a party alleges such a statute is unconstitutionally vague on its face, a court should "examine the complainant's conduct before analyzing other hypothetical applications of the law." *Vill. of Hoffman Estates v.*

9

*Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982) (noting that "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others"); *see United States v. Mazurie*, 419 U.S. 544, 550 (1975) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.").

> Statutory interpretation is a question of law that we review de novo. In interpreting statutes, we seek to actualize the legislature's collective intent. In doing so, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment. If the plain language is clear and unambiguous, our analysis ends because the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute. We give effect to the results of that unambiguous language unless doing so results in absurd consequences. But when two alternative, plausible explanations of the "plain language" of a statute so conflict as to make the statute's language ambiguous, we may consult extra-textual factors, such as the legislative history of the statute, to resolve the ambiguity.

*Nguyen v. State*, 359 S.W.3d 636, 641–42 (Tex. Crim. App. 2012) (cleaned up).

In determining the meaning of a statute, the "[c]onstruction of [the] statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute." *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993). However, courts "do not defer to administrative interpretation in regard to questions which do not lie within administrative expertise, or deal with a nontechnical question of law." *Rogers v. Tex. State Bd. of Pub. Acct.*, 310 S.W.3d 1, 6 (Tex. App.—Austin 2008, no pet.).

### 2. Waiver

The State contends that Ghanem failed to preserve all facets of this issue. "[A] challenge to the constitutionality of a statute is a forfeitable right and must be preserved

in the trial court during or after trial." *Cooper v. State*, 673 S.W.3d 724, 749 (Tex. App.—Fort Worth 2023, no pet.); *see Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009). Both facial and as-applied challenges must be raised in the trial court to preserve error. *Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014); *see Flores v. State*, 245 S.W.3d 432, 437 n.14 (Tex. Crim. App. 2008) (noting the "well-established requirement that appellant must preserve an 'as applied' constitutional challenge by raising it at trial"); *see also* TEX. R. APP. P. 33.1 (regarding error preservation).

First, the State argues that Ghanem's facial challenges to both statutes were not preserved because (1) his pre-trial motion to quash did not challenge the constitutionality of § 168.001(1), and (2) the trial court did not explicitly rule on that motion. We agree that the facial challenge to § 168.001(1) is not preserved for our review. Ghanem's pre-trial motion to quash argued only that § 168.002(7) is facially unconstitutional; therefore, the issue of whether § 168.001(1) is facially unconstitutional is not properly before us. *See Karenev*, 281 S.W.3d at 434 ("[A] defendant may not raise for the first time on appeal a facial challenge to the constitutionality of a statute.").

However, arguably, the trial court implicitly overruled the motion to quash by proceeding with trial. *See* TEX. R. APP. P. 33.1(a) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the trial court . . . ruled on the request, objection, or motion, either expressly *or implicitly* . . . ." (emphasis added)). Accordingly, out of an abundance of caution, we conclude that the issue of whether § 168.002(7) is facially constitutional has been preserved for appellate review. *See id. But see Prince v. State*, 137 S.W.3d 886, 888 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("By failing to present this Court with evidence of an adverse ruling to his motions to

11

quash the information, appellant has waived any error arising from the trial court's refusal to grant any such motions.").

The State further contends that Ghanem waived his as-applied challenge to § 168.001(1) because he did not raise that issue in his motion to quash or oral motion for directed verdict.

> An "as applied" challenge is brought during or after a trial on the merits, for it is only then that the trial judge and reviewing courts have the particular facts and circumstances of the case needed to determine whether the statute or law has been applied in an unconstitutional manner. Since a contention that a statute is unconstitutional as applied requires a recourse to evidence, it cannot be properly raised by a pretrial motion to quash the charging instrument.

*State ex rel. Lykos*, 330 S.W.3d at 910 (cleaned up); *see State v. Rosseau*, 398 S.W.3d 769, 779 (Tex. App.—San Antonio 2011) (noting that a pretrial motion to quash an indictment may be used only for a facial rather than an as-applied challenge to the constitutionality of a statute), *aff'd*, 396 S.W.3d 550 (Tex. Crim. App. 2013). Here, counsel stated as follows in making his oral motion for directed verdict after the close of evidence:

> We also move for—we also raise the issue that this statute is vague as applied to Dr. Ghanem, vague in violation of 14th and 15th Amendment[s] of the United States [Constitution], Article 1 Section 19 of the Texas Constitution in that a reasonable person cannot read this statute and determine on the face of the statute what types of treatment qualify for the exemption and what types do not. And, therefore, the statute is unconstitutional and the indictment supporting this case is void.

The trial court denied the motion. As the State notes, although counsel did not explicitly specify which statute was "vague as applied" to Ghanem, it is apparent from counsel's reference to "the exemption" that he was referring to § 168.002(7) only, not § 168.001(1). Therefore, we agree with the State that Ghanem failed to preserve his as-applied challenge to § 168.001(1). We proceed to consider the two parts of Ghanem's first issue which are properly before us—the facial and as-applied constitutionality of § 168.002(7).

12

**3.     Analysis**

As noted, § 168.002(7) creates an exemption from Chapter 168 certification requirements for any clinic which is "owned or operated by a physician" who (1) "treats patients within the physician's area of specialty" and (2) "who personally uses other forms of treatment, including surgery," (3) "with the issuance of a prescription for a majority of the patients." TEX. OCC. CODE ANN. § 168.002(7). Ghanem argues that this statute is unconstitutionally vague because it does not define the terms "personally uses" or "other forms of treatment." He further argues that, though the interpretation of the statute is within the province of the TMB, the TMB "changes its interpretations regularly, without notice or guidance to those attempting to comply." Ghanem points to Bredt's testimony that he did not know whether "things such as group therapy" would qualify as "other forms of treatment" for purposes of the exemption, and Swanholm's testimony that TMB does not publish rules to assist physicians in determining whether the exemption applies to their practice.

The parties direct us to no cases interpreting this statute or determining whether it is unconstitutionally vague. Ghanem cites *State v. Crumbley*, in which a Florida intermediate appellate court reviewed a trial court's ruling that a similar statute was unconstitutionally vague. 247 So. 3d 666, 670 (Fla. Dist. Ct. App. 2018). The statute at issue in that case required any privately-owned facility to register as a pain management clinic if it "employ[ed] a physician who is primarily engaged in the treatment of pain by prescribing or dispensing controlled substance medications." *Id.* at 688 (citing former FLA. STAT. ANN. § 458.3265(1)(a)). The statute was amended in 2011 to define a "pain management clinic" as any facility "[w]here in any month a majority of patients are

13

prescribed opioids, benzodiazepines, barbiturates, or carisoprodol for the treatment of chronic nonmalignant pain." *Id.* (citing FLA. STAT. ANN. § 458.3265(1)(a)(1)(c)(II)). The appellee physician was charged with violating the statute throughout 2010 and 2011; therefore, both the original and amended versions of the statute were implicated. *Id*. Without hearing evidence, the trial court found both versions of the statute unconstitutionally vague because they "fail to provide an objective guideline and standard for determining when a medical facility develops into a 'pain-management clinic' requiring registration," "do not identify who is responsible for registering the medical facility," and "do not address 'the amount of time a facility has to register . . . after the registration requirement is triggered.'" *Id.* at 669 (quoting the trial court's ruling). The appeals court found the trial court erred because it "conflated the as-applied and facial vagueness challenges, addressing them as one and the same." *Id.* at 670. The court further held that it could not make the determination of constitutionality "based upon a record with a paucity of facts" as the trial court had failed to take evidence or make factual findings. *Id.* at 671–72. Accordingly, the appeals court reversed the trial court's ruling and remanded for further proceedings. *Id.* at 672.

We do not find *Crumbley* persuasive as to the issues before us. The statute at issue there is akin to occupations code § 168.001(1) in that it generally defines which clinics are subject to the registration requirement; it is not similar to § 168.002(7), which defines an exemption to the requirement. The specific concerns raised by Ghanem in this case—i.e., the vagueness of the terms "personally uses" and "other forms of treatment"—were not at issue there. Moreover, unlike in *Crumbley*, we have a fully developed record in which Ghanem and the State produced testimony and arguments concerning whether

14

§ 168.002(7) is unconstitutionally vague as applied to him. Having reviewed the entire record and pertinent authority, we cannot conclude, as the *Crumbley* trial court did, that the statute is void for vagueness.

In the context of the practice of medicine, the plain meaning of "treatment" is "management and care to prevent, cure, ameliorate, or slow progression of a medical condition." MERRIAM-WEBSTER'S ONLINE DICTIONARY, https://www.merriam-webster.com/ dictionary/treatment#medicalDictionary (last visited Jan. 9, 2024); *see* TEX. HEALTH & SAFETY CODE ANN. § 313.002(6) (providing that, for purposes of the Consent to Medical Treatment Act, "medical treatment" means "a health care treatment, service, or procedure designed to maintain or treat a patient's physical or mental condition, as well as preventative care"); *Tesoro v. Alvarez*, 281 S.W.3d 654, 659 (Tex. App.—Corpus Christi– Edinburg 2009, no pet.) ("Within the medical context, 'treatment' is defined as 'the care and management of a patient to combat, ameliorate, or prevent a disease, disorder, or injury.'" (quoting MOSBY'S MEDICAL DICTIONARY 1880 (8th ed. 2009))), *abrogated on other grounds by Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753 (Tex. 2014). The parties appear to agree with the unanimous expert witness testimony establishing that "treatment" does not include initial consultations or diagnostic testing.

Crucially, even if an extremely expansive definition of "treatment" was intended by the Legislature, § 168.002(7) unambiguously restricts the types of treatment which may qualify for the exemption in three ways. First, the term "forms of treatment" is preceded by the qualifier "other." TEX. OCC. CODE ANN. § 168.002(7). The statute explains that the "other" form of treatment must be used along "with the issuance of a prescription" for the majority of the practice's patients. *Id.* Thus, the plain, unambiguous meaning of "other

forms of treatment" is "forms of treatment other than the issuance of a prescription." This is consistent with the testimony of Swanholm and Bredt, officials of the agency responsible for enforcing Chapter 168. *See Moore*, 845 S.W.2d at 823.

Second, § 168.002(7) states that, in order to qualify for the exemption, the "other forms of treatment" must be "personally use[d]" by the physician who owns or operates the facility. *Id*. The plain, unambiguous meaning of this term is that the physician himself or herself—not an associate, employee, or patient—must perform the treatment on, or administer the treatment to, a majority of the practice's patients. Finally, as all three expert witnesses testified, and as the parties appear to agree, the "other forms of treatment" must be "within the physician's area of specialty." *Id.*

Even though "treatment" and "personally use[d]" are not defined in the statute, they are not ambiguous or vague; instead, their meanings, given the context, are definite enough to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. *See Holcombe*, 187 S.W.3d at 499. The statute is not so indefinite as to permit arbitrary or discriminatory enforcement. *See Kolender*, 461 U.S. at 357.

Ghanem appears to agree that, for the § 168.002(7) exemption to apply to his practice, he must have "personally" performed treatments within his specialty, other than prescribing one of the four listed controlled medications, on a majority of his patients. *See* TEX. OCC. CODE ANN. § 168.002(7). He argues that his "entire prosecution is based on the arbitrary determination by State actors (or their hired experts) that a given modality of treatment listed in Dr. Ghanem's patient records does not meet the exemption requirements." We disagree. As with any criminal statute, the State has a degree of discretion in the enforcement of Chapter 168, but the State's determination that a person

16

has violated the statute is not arbitrary; rather, it is based on objective, understandable standards.

In any event, even if we interpret the statute in the way suggested by Ghanem—so that any activities aimed at improving the patient's condition (such as yoga, prescriptions of non-controlled medications, preparation of herbal tea, and "cognitive behavioral therapy") are counted as "other forms of treatment"—there is no evidence that Ghanem "personally" performed those services on a "majority" of his practice's patients over any given period of time. Carroll stated that Ghanem personally performed cupping and acupuncture on some patients as part of an "integrated therapy program," but sign-in sheets showed that only around twenty patients attended program meetings in March of 2019. Even assuming that Ghanem personally performed "other forms of treatment" on all of these patients, that is only a small fraction of the total number of patients he saw during that month, and so his practice would not be eligible for the § 168.002(7) exemption. Similarly, Gajraj testified that "cognitive behavioral therapy" and the "integrated therapy program" are "other forms of treatment" for chronic pain, but there was no evidence that Ghanem himself provided these services to a majority of his patients during any particular time period. Thus, while the statute may not be a model of clarity or precision, it is not unconstitutionally vague as applied to Ghanem. *See Holcombe*, 187 S.W.3d at 500 ("Because we are limited to the use of words, we cannot demand mathematical certainty from our language."); *Corwin v. State*, 870 S.W.2d 23, 29 (Tex. Crim. App. 1993) ("That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense." (quoting *United States v.*

17

*Petrillo*, 332 U.S. 1, 7 (1947))). Further, because § 168.002(7) is valid in at least one circumstance, we also conclude that the statute is not unconstitutionally vague on its face. *See Estes*, 546 S.W.3d at 697–98; *see also Salerno*, 481 U.S. at 745.

Ghanem's first issue is overruled.

## B.    Evidentiary Sufficiency

By his second issue, Ghanem contends that the evidence was insufficient to show that his facility satisfied the definition of "pain management clinic" provided in § 168.001(1) of the occupations code. Specifically, he argues the evidence did not support a finding that his clinic issued prescriptions to a majority of its patients "on a monthly basis" as required by the statute. *See* TEX. OCC. CODE ANN. § 168.001(1).

In conducting a sufficiency review, we consider the evidence "in the light most favorable to the verdict" to determine whether a rational trier of fact could have found the challenged element beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.); *see* TEX. CODE CRIM. PROC. ANN. art. 38.04 ("The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony.").

The parties disagree on the meaning of the phrase "on a monthly basis." Ghanem argues that, in order to show that he prescribed controlled pain medication to patients "on a monthly basis," the State must have produced evidence of "more than one month of data" from his practice. He cites a judgment issued by the 98th District Court of Travis

County in which that court, upon review of an administrative licensing proceeding, held that "there must be a finding that that the facility in question issued the majority of their patients prescriptions for substances listed in Tex. Occ. Code § 168.001(1) for at least two months" in order to qualify as a "pain management clinic" for purposes of that statute. *Morgan v. Tex. Med. Bd.*, No. D-1-GN-17-002301, at *1 (98th Dist. Ct., Travis County, Tex. Apr. 16, 2019). He contends that the evidence did not support such a finding here because Rahman and Nichols analyzed data only from March of 2019, and Sinha did not specify exactly when she observed that there was a "high" number of patients being prescribed controlled pain medications.

In response, the State contends that "on a monthly basis" is synonymous with "in any given month." It argues that this must have been the Legislature's intent "because otherwise the statute would not specify *any* time period within which the percentage [i.e., the percentage of patients being prescribed controlled pain medications out of all the practice's patients] is to be calculated." The State notes that the TMB and the State Office of Administrative Hearings have adopted this construction. *See Tex. Med. Bd. v. Somerville*, No. 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.MD, 2017 WL 2500694, at *8 (Tex. St. Off. Admin. Hgs. June 1, 2017) ("[T]he plain language definition of 'monthly' can refer to a single month, and [TMB]'s proof that a majority of the patients at [respondent's] clinics were prescribed opioids, benzodiazepines, and/or carisoprodol in a single month (June 2013) is sufficient to establish that the clinics were 'pain management clinics' subject to the Act's registration requirements."). It also argues that such a construction would be consistent with analogous statutes in other states which explicitly use the term "in any month." *See* ARIZ. REV. STAT. ANN. § 36-448.01(2)(a); FLA. STAT. ANN. § 458.3265(1)(a)(1)(c)(II); W. VA.

19

CODE ANN. § 16-5H-2.

Assuming, but not deciding, that Ghanem's more demanding interpretation of the statute is correct, the evidence was sufficient to support the jury's implicit finding that his practice prescribed opioids, benzodiazepines, barbiturates, or carisoprodol to a majority of patients "on a monthly basis." Ghanem does not dispute that, according to the evidence, he prescribed at least one of these medications to a majority of his patients in April of 2019. Moreover, Sinha testified:

| | |
|---|---|
| Q. [Defense counsel] | And when people would come in for controlled substances, they would come in every month because you can't write a three-month prescription for a controlled substance, right? |
| A. [Sinha] | Yeah, there is no refill on controlled medications. |
| Q. | But on the other medications that weren't controlled substances, you can write a three-month prescription? |
| A. | Uh-huh. |
| Q. | So patients who were getting both could some months maybe get a three-month refill and then only have to come in every month to get the pain medication as well? |
| A. | Yeah. I mean, they have to come—for pain medication they have to come no matter what because there is no refill on it. |

The evidence also included records obtained from several pharmacies showing that prescriptions for medications listed in § 168.001(1) were filled for Ghanem's patients in each of February, March, and April of 2019.

A reasonable juror could find beyond a reasonable doubt, from Sinha's testimony and the pharmacy records, that Ghanem's practice prescribed one of the specified medications to a majority of its patients "on a monthly basis." *See* TEX. OCC. CODE ANN.

20

§ 165.001(1). We overrule Ghanem's second issue.

### III.    MODIFICATION OF JUDGMENT

The judgment of conviction incorrectly lists the "Statute for Offense" as "165.152 Penal Code." We have the power to modify a judgment to speak the truth when we are presented with the necessary information to do so. *See Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify the judgment to reflect that the "Statute for Offense" is § 165.152 of the Texas Occupations Code.

### IV.    CONCLUSION

The trial court's judgment is affirmed as modified herein. *See* TEX. R. APP. P. 43.2(b).

DORI CONTRERAS
Chief Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
11th day of January, 2024.

21