

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| AARON VERDINES, | § | No. 08-23-00312-CR |
| Appellant, | § | Appeal from the |
| v. | § | 175th Judicial District Court |
| THE STATE OF TEXAS, | § | of Bexar County, Texas |
| Appellee. | § | (TC# 2021CR2461) |

**O P I N I O N**

This appeal involves how we interpret and apply a unique statute of limitations provision in the Texas Code of Criminal Procedure that allows for "no limitation" in sexual assault cases under certain circumstances in which DNA testing is involved.

Appellant Aaron Verdines was indicted in 2021 on four counts of aggravated sexual assault alleged to have occurred on or about July 1, 2003. Verdines filed a motion to dismiss the indictment, contending the statute of limitations ran before he was indicted. He also filed a motion to suppress any reference to a 1998 case, in which he had been charged with sexual assault, on the ground that the charges had been dismissed and the case expunged from his record. After the trial court denied both motions, Verdines pled no contest to all four counts in the indictment. The trial court assessed punishment at 20 years' confinement on each count, with the sentences to run

concurrently, and certified his right to appeal on limited issues.[1]  Verdines appealed, challenging the denial of both motions. For the reasons set forth below, we affirm the judgment of conviction.[2]

## I.   THE LAW ON STATUTE OF LIMITATIONS

### A.   General ten-year limitation period

In general, aggravated sexual assault of an adult has a ten-year limitation period. Tex. Code Crim. Proc. Ann. art. 12.01(2)(E) (specifying the general ten-year limit within which felony indictments on sexual assault charges may be brought); *Id.* art. 12.03(d) ("Except as otherwise provided by this chapter, any offense that bears the title 'aggravated' shall carry the same limitation period as the primary crime.").

### B.   No-limitation exception

However, during the time period relevant to this case, Texas Code of Criminal Procedure Article 12.01, which has since been amended, provided a no-limitation exception to the general ten-year statute of limitation under certain circumstances, specifically providing that there is: "(1) no limitation [for] (B) sexual assault, if during the investigation of the offense biological matter is collected and subjected to forensic DNA testing and the testing results show that the matter does not match the victim or any other person whose identity is readily ascertained[.]"[3]  This provision

---

[1] *See* Tex. R. App. P. 25.2(a)(2) (in "a case in which a defendant's plea was . . . nolo contendere and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant—a defendant may appeal . . . those matters that were raised by written motion filed and ruled on before trial").

[2] The appeal was transferred from the Fourth Court of Appeals pursuant to a Texas Supreme Court docket equalization order. Accordingly, we apply the Fourth Court of Appeals' precedent to the extent it conflicts with our own. *See* Tex. R. App. P. 41.3.

[3] *See* Act of April 4, 2001, 77th Leg., R.S., ch. 12, § 1, art. 12.01(1)(B), 2001 Tex. Gen. Laws 20, 20 (redesignated as Article 12.01(1)(C), but not substantively changed, as part of the Jessica Lunsford Act, 80th Leg., R.S., ch. 593, § 1.03, art. 12.01(1)(C), 2007 Tex. Gen. Laws 1120, 1120 (codified at Tex. Code Crim. Proc. Ann. art. 12.01(1)(C))). The amendment was made retroactive to any pending cases not already time-barred. *See id.*, § 4.01(c), art. 12.01, 2007 Tex. Gen. Laws at 1148 (codified at Tex. Code Crim. Proc. Ann. art. 12.01). This version therefore applies to Verdines's case.

articulates the conditions under which the no-limitation exception applies to both sexual assault and aggravated sexual assault cases. *See Ex parte Campozano*, 610 S.W.3d 572, 575–76 (Tex. App.—Dallas 2020, pet. ref'd) (noting that although the no-limitation statute expressly refers to sexual assault cases, it applies equally to aggravated sexual assault cases) (citing Tex. Code Crim. Proc. Ann. art. 12.03(d) (subjecting aggravated version of offense to same limitations period as primary offense)).

Thus, based on the applicable statutory language, to apply the no-limitation exception to Verdines's case, the State was required to establish that biological matter was collected from the complainant, it was subjected to DNA testing, and the testing results did not match the victim or "any other person whose identity is readily ascertained." Upon establishing these criteria, the sexual assault case would be treated as having no limitation and may be brought at any time.

## II. FACTUAL BACKGROUND

The facts in this case involve two unrelated sexual assault cases. In the case before us, Verdines was indicted for aggravated sexual assault of a then-17-year-old complainant. She was walking home from her boyfriend's house in the early morning hours of July 31, 2003, when she was assaulted by a stranger after he picked her up in his car and told her that he had a gun. The record indicates that the complainant immediately reported the assault to her parents, who contacted the San Antonio Police Department (SAPD) and took her to the hospital where biological material was collected from her person. However, after the complainant failed to appear

---

The substance of the 2001 language changed in 2019 pursuant to The Lavinia Masters Act. *See* The Lavinia Masters Act, 86th Leg., R.S., ch. 408, § 2, art. 12.01(1)(C)(i), 2019 Tex. Sess. Law Serv. 764, 764 (to be codified at Tex. Code Crim. Proc. Ann. art. 12.01(1)(C)(i)). The revised language of 2019 is similarly retroactive to all cases not barred by limitations. *See id.* at ch. 408, § 12, art. 12.01, 2019 Tex. Session Law Service at 772.

Given that our case regards whether the indictment was barred by limitations ten years after 2003, the applicable statutory language is the 2001 language we have quoted, which was in effect between 2001 and 2019. *See Ex parte Campozano*, 610 S.W.3d 572, 576 n.2 (Tex. App.—Dallas 2020, pet. ref'd).

to make a statement at the police station the next month, SAPD closed the case "pending cooperation."[4]

The record reflects that 12 years later, in February 2015, the complainant's breast swab material was submitted to BODE Technologies for analysis. Though the record does not contain a report from BODE Technologies, it is clear that DNA was extracted from the material that did not match the victim, and that DNA profile was thereafter uploaded into the CODIS database (the FBI's Combined DNA Index System) on an undisclosed date.[5]

In the meantime, Verdines's DNA profile had been in the CODIS database since at least 1999 from an unrelated sexual assault in 1998, which the Bexar County Sheriff's Office had been investigating.[6] On August 21, 2018, a match occurred in the CODIS system between the DNA profile that was extracted from the complainant's breast swab and Verdines's DNA profile.

On August 28, 2018, the Bexar County Criminal Investigations Laboratory sent a letter to a sergeant at the Bexar County Sheriff's Office, signed by forensic scientist and local CODIS administrator Robert Sailors (the Sailors letter). The Sailors letter stated there was a match between the DNA profile that was collected in the Sheriff's 1998 case and the DNA profile from the breast swab in the 2003 sexual assault case that SAPD was investigating. The Sailors letter also stated, "Your case [which we take to mean the Sheriff's 1998 case] was previously involved in a CODIS match to a convicted offender. The personal identifying information for this convicted offender

---

[4] One of the officers who interviewed the complainant on the morning of the offense asked her if she was "making up the story" to get out of trouble with her parents, as she had spent the evening with her boyfriend and did not arrive home until approximately 3:30 a.m.

[5] *See* Tex. Gov't Code Ann. § 411.141(1) (defining the term CODIS as used in the Government Code).

[6] As discussed in more detail below, although we do not have any documentation relating to the 1998 case, the parties appear to agree that Verdines's DNA profile was placed into the CODIS database after he was arrested by the Bexar County Sheriff's Office and charged in the 1998 sexual assault. The charges against him were later dismissed after his co-defendant pled to the offense.

was provided to you on July 27, 2008 by Texas DPS."[7] *See* Tex. Gov't Code Ann. § 411.142 (providing that the Texas Department of Public Safety (DPS) runs the Texas DNA database, which is compatible with CODIS).

The Sailors letter closed by informing the Sheriff's office that "[y]our contact information has been shared with the other agency involved in this database match" (which we take to mean the database match between Verdines's DNA profile and the DNA extracted in the 2003 case SAPD was investigating). Shortly thereafter, in October 2018, Tiffany Bazazzadegan, another forensic scientist and a local CODIS administrator working for DPS in Austin, emailed SAPD personnel apprising them that there had been a match between the DNA profile obtained in the Bexar County Sheriff's 1998 case and the DNA profile obtained from the breast swab in the 2003 sexual assault case. The letter suggested that SAPD contact the Bexar County Sheriff's Office for more information concerning "this investigative lead."

In January 2019, Shantel Kaster, another local CODIS administrator from the DPS office in Austin, sent SAPD a letter with the subject line: "CODIS Match Confirmation for MID 207070." Kaster explained that on August 21, 2018, during a routine search in DPS's CODIS laboratory, there was a match between Verdines's DNA profile and the DNA profile from the 2003 breast swab. The letter stated, "[t]he CODIS sample has been re-examined and verified against the original profile uploaded into the CODIS database." The letter further advised SAPD that DPS was notifying it of the match for the sole purpose of allowing SAPD to attain a search warrant to obtain a specimen from Verdines, which could then be submitted to Bode Cellmark Forensics to confirm the database match.

---

[7] There is no additional information in the record regarding the 2008 match referenced in the Sailors letter.

5

After receiving the CODIS notification, an SAPD officer was assigned to the 2003 sexual assault case. In May 2019, that officer contacted the complainant, who said she was willing to cooperate with the investigation. In June 2019, pursuant to a search warrant, the SAPD officer obtained a buccal swab from Verdines to confirm that his DNA matched the DNA from the breast material from the 2003 sexual assault case. On May 28, 2020, the officer received confirmation from a laboratory in Virginia that the DNA profiles matched. On March 17, 2021, Verdines was indicted on four counts of aggravated sexual assault in the 2003 case.[8] The indictment was devoid of language pertaining to any applicable statute of limitations.

## III. PROCEDURAL BACKGROUND

Following his indictment, Verdines initially filed a broadly worded pretrial motion to suppress in which he argued he had been unlawfully arrested and detained, and any statements he made and any evidence obtained from his detention should be suppressed under the Fourth Amendment. At the hearing on the motion, however, Verdines raised a new argument, seeking to suppress any discussion or any testimony or evidence from [the 1998 sexual assault case], to include any reference to his DNA profile collected in that case, contending that all of the records from that case had been expunged in October 2019. The trial court denied the motion without providing any basis for its decision.

After obtaining new defense counsel, Verdines filed a "Motion to Dismiss Indictment Presented Outside the Statute of Limitations" (motion to dismiss) in which he asked the trial court to dismiss the indictment because it was presented outside the ten-year statute of limitations. Verdines attached to his motion the Sailors letter, which he argued demonstrated that there was a

---

[8] An individual may be charged with aggravated sexual assault if during the course of the assault, by his "acts or words, [he] places the victim in fear . . . of death [or] serious bodily injury[.]" Tex. Penal Code Ann. § 22.021(a)(2)(A)(ii).

6

CODIS match between Verdines's DNA profile and the DNA from the breast swab as early as 2008. He argued that the ten-year statute of limitations began running at the time of the match—in effect viewing the "no-limitation" statute as a provision that tolled the statute of limitations until a DNA match was made.[9] Consequently, he argued, the State had ten years to indict him after the purported 2008 match occurred, but since the State did not indict him until 2021, the statute of limitations had already expired.

In the trial court, the State appeared to agree with Verdines's interpretation of the no-limitation statute as a tolling provision. However, the State argued the statute was tolled until 2018, when the Sailors letter was sent to the Bexar County Sheriff's Office advising it of the DNA match. The State further argued that, despite the reference in the Sailors letter to the 2008 match—which the State described as a "routine check"—the statute of limitations did not start running until 2018, contending "nobody was notified until 2018" of the "match in the CODIS system." According to the State, the 2021 indictment was filed three years into the ten-year statute of limitations. Verdines, however, continued to argue that the match occurred in 2008, rather than 2018, and that the Bexar County Sheriff's Office was informed of the match at that time. He asserted that simply because the Sheriff's Office chose to turn a "blind eye" to the match in 2008, this did not mean "everybody" (presumably referring to SAPD) gets to do so.

Following a hearing, the trial court denied the motion to dismiss, citing two of our sister courts' opinions interpreting the no-limitation statute, which we discuss below. *See Ex parte Campozano*, 610 S.W.3d at 578; *Ex parte Lovings*, 480 S.W.3d 106, 111–12 (Tex. App.—Houston [14th Dist.] 2015, no pet.) Thereafter, pursuant to a plea bargain, Verdines pled no contest to the four counts in the indictment. Punishment was assessed at 20 years on each count, with the

---

[9] At the hearing on the motion to dismiss, Verdines asked the trial court to consider the Sailors letter "under two hearsay exceptions to the business record and admission of the party opponent." The State did not object to the letter, and both parties and the trial court discussed the information in the Sailors letter during the hearing.

sentences to run concurrently. After the trial court certified Verdines's right to appeal on limited issues, this appeal ensued.

## IV. ISSUES ON APPEAL

On appeal, Verdines argues: (1) the trial court erred by denying his motion to dismiss the indictment because the statute of limitations had expired; (2) the trial court should have dismissed the indictment because, on its face, the indictment did not contain any language tolling the limitations period; and (3) the trial court abused its discretion by denying his motion to suppress the DNA results.

## V. PRETRIAL MOTION TO DISMISS

As a preliminary matter, we address the State's argument that Verdines's motion to dismiss was an "improper procedural vehicle to assert [his] statute of limitations defense," as it required the "development of facts." According to the State, the trial court was only authorized to determine the merits of Verdines's motion "from the four corners of the indictment, not from evidence outside the indictment." The State concludes that if Verdines wished to raise a statute of limitations challenge to the indictment that involved evidentiary issues, he was required to do so during either a bench or jury trial, and he waived his right to do so by entering his nolo contendere plea.[10]

The Texas Court of Criminal Appeals has expressly recognized that a defendant "may raise a limitation claim before trial by a motion to dismiss under Texas Code of Criminal Procedure

---

[10] The State relies on the Court of Criminal Appeals holding in *State ex rel. Lykos v. Fine*, 330 S.W.3d 904 (Tex. Crim. App. 2011) for the proposition that "there is no legal basis for a pre-trial evidentiary hearing to determine whether to dismiss an indictment for being outside the statute of limitations." *Lykos*, however, does not support the State's position. In *Lykos*, the defendant did not raise a challenge to the form or substance of his indictment; instead, he brought a pretrial motion to declare the death-penalty sentencing statute unconstitutional and prevent its application in his case. *Lykos*, 330 S.W.3d at 906. The trial court held an evidentiary hearing on the defendant's claim, but the Court of Criminal Appeals held that it was improper for the trial court to do so, as the defendant's motion was based on an "as applied" challenge to the statute. *Id*. The court reasoned that it was premature to bring an as-applied challenge to the death penalty statute prior to trial, as the defendant had neither been convicted nor sentenced to the death penalty, and there was a possibility that he would be found not guilty at trial, making the issue entirely "hypothetical." *Id*. at 911–12.

8

Article 27.08(2), he may raise it at trial as a defense, or he may waive it."[11] *Ex parte Edwards*, 663 S.W.3d 614, 617 (Tex. Crim. App. 2022) (citing *Proctor v. State*, 967 S.W.2d 840, 844 (Tex. Crim. App. 1998) (en banc) ("Before trial, a defendant may assert the statute of limitations defense by filing a motion to dismiss under Article 27.08(2) of the Texas Code of Criminal Procedure.")). As in Verdines's case, the defendant in *Edwards* was indicted for sexual assault outside the ten-year statute of limitations, but the indictment did not include any facts to indicate that the statute was tolled or that it was subject to any exception. *Id*. at 615–16. The defendant brought a pretrial petition for a writ of habeas corpus seeking to dismiss the indictment, and the State responded by raising the statutory exception for situations in which biological material was collected and forensic testing done. *Id.* The court concluded that although the defendant could not raise this issue in a pretrial habeas petition because it was a reparable defect, he could have raised the issue in a pretrial motion to dismiss or quash the indictment. *Id*.

In other words, as the Court of Criminal Appeals explained last year, "[g]enerally, a pretrial writ of habeas corpus is not available to test the sufficiency of an indictment" on a statute-of-limitation complaint "if the record suggests the indictment can be amended to cure the defect or if a statute provides that the applicable limitations period may turn on a question of fact." *Ex parte Vieira*, 676 S.W.3d 654, 657 (Tex. Crim. App. 2023).[12] In those instances, as is the case here, the fact-based statute-of-limitation complaint must be brought through a pretrial motion to dismiss or quash or as a defensive issue at trial. *Edwards*, 663 S.W.3d at 618 (recognizing that where an

---

[11] Article 27.08(2) provides that "[t]here is no exception to the substance of an indictment . . . except . . . it appears from the face thereof that a prosecution for the offense is barred by a lapse of time, or that the offense was committed after the finding of the indictment." Tex. Code Crim. Proc. Ann. art. 27.08 (2).

[12] In *Vieira*, the court found the defendant's pretrial writ of habeas corpus cognizable "because there is nothing to consider beyond the face of the indictment, and resolution in his favor would render the indictment irreparable." *Ex parte Vieira*, 676 S.W.3d 654, 658 (Tex. Crim. App. 2023). The court explained: "Nothing in the relevant statutes suggests that the applicable statute of limitations might turn on a fact issue. Neither the indictment nor the record includes any facts that would otherwise toll or extend the limitations period, and the State does not claim that they do." *Id*. at 657–58.

indictment is "reparable by resort to an exception[,]" a "statute-of-limitation claim is not cognizable on pretrial habeas" and must instead be "raised in a motion to quash and/or as a defense at trial"); *see also Ex parte Smith*, 178 S.W.3d 797, 805 (Tex. Crim. App. 2005) (per curiam) (holding that a defendant must bring a motion to dismiss or quash an indictment prior to trial to challenge the sufficiency of a tolling allegation in a pleading to give the State the opportunity to repair or amend the pleading before the start of trial).[13]

Article 28.01, § 1 of the Texas Code of Criminal Procedure provides that a trial court "may set any criminal case for a pre-trial hearing before it is set for trial upon its merits . . . to determine . . . [p]leadings of the defendant [or] . . . [e]xceptions to the form or substance of the indictment or information[.]" Tex. Code Crim. Proc. Ann. art. 28.01, § 1(2), (4). Texas Court of Criminal Appeals has held that "[t]he plain language of Article 28.01, § 1 contains no express legislative intent to deprive trial courts of their discretionary authority to hold pretrial evidentiary hearings on preliminary matters that can, and should be, resolved expeditiously." *State v. Hill*, 499 S.W.3d 853, 866–67 (Tex. Crim. App. 2016); *see also State v. Rosenbaum*, 910 S.W.2d 934, 935 (Tex. Crim. App. 1994) (recognizing that a trial court has the "authority to hold [a] pretrial hearing, hear evidence regarding materiality, and make the legal determination" as to whether the allegations in an indictment were legally sufficient to support the perjury offense).[14]

---

[13] In fact, a defendant risks forfeiting his right to raise a statute of limitations issue if it is not raised before trial or during the presentation of evidence on a plea of nolo contendere. *See Floyd v. State*, 983 S.W.2d 273, 274 (Tex. Crim. App. 1998) (en banc) (citing *Proctor*, 967 S.W.2d at 844).

[14] In *Rosenbaum*, the court contrasted the defendant's challenge to the legal sufficiency of the allegations in an indictment, with a challenge that there was insufficient evidence presented to the grand jury to support the indictment's factual allegations. *State v. Rosenbaum*, 910 S.W.2d 934, 935 (Tex. Crim. App. 1994). The court concluded that the defendant could not raise the latter challenge, as the trial court did not have the authority "to consider evidence beyond the face of the indictment to test the sufficiency of the materiality allegations," or hold a "minitrial" to test the sufficiency of the evidence. *Id*. at 941, 947 (recognizing that "[t]he statutes authorizing pretrial proceedings do not contemplate a "minitrial" on the merits of allegations made in the charging instrument"). Here, however, Verdines does not make a challenge to the merits of the allegation, nor did the trial court hold a "minitrial" on the merits of the factual allegations in the indictment.

Here, the question of whether the no-limitation exception to the ten-year statute of limitations for sexual assault applied to Verdines's case is a question that could be, and was, resolved prior to trial in an expeditious manner. Accordingly, we conclude that the trial court had the authority to hold a pretrial evidentiary hearing on Verdines's motion to dismiss and to resolve the question of whether the no-limitation exception applied. We therefore turn to the merits of Verdines's argument that the statute of limitations had already run by the time the grand jury indicted him.

## VI. THE NO-LIMITATION STATUTE APPLIES

In his first issue, Verdines contends the State failed to establish that the no-limitation statute applies to his case, and instead, the ten-year statute of limitations applies. Verdines maintains that the applicable ten-year statute of limitations either began running in 2003, when the offense occurred, or was tolled until 2008, when he believes a CODIS match first occurred. In turn, regardless of which date we apply, he argues, ten years had already run by the time the grand jury indicted him in 2021. As explained below, however, we agree with the State that the no-limitation exception applies, and the indictment is therefore not time-barred.

### A. Standard of review

In large part, our decision as to whether Verdines's case is time-barred depends on how we construe the requirements set forth in the no-limitation statute. Statutory construction is a question of law, which we review de novo. *Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019). When construing statutes, we "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Id*. (citing *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). If the language of a statute is plain, "we follow that language unless it leads to absurd results that the legislature could not have possibly intended." *Id*. But "[w]hen the plain language leads to absurd results, or if the language of the statute is ambiguous, we consult extra-textual

11

factors to discern the legislature's intent." *Id.* (citing *Boykin*, 818 S.W.2d at 785–86). An "ambiguity exists when a statute may be understood by reasonably well-informed persons in two or more different senses; conversely, a statute is unambiguous when it permits only one reasonable understanding." *See Bryant v. State*, 391 S.W.3d 86, 92 (Tex. Crim. App. 2012) (citing *Mahaffey v. State,* 364 S.W.3d 908, 913 (Tex. Crim. App. 2012)).

### B. Applicable law

As set forth above, the applicable no-limitation provision of the Code of Criminal Procedure, as it existed from 2001 to 2019, provided that there was no statute of limitations for certain sexual assault cases when biological material is collected from a complainant and submitted for testing, and "testing results show that the matter does not match the victim or any other person whose identity is readily ascertained."[15] This former code provision, which has since been amended, was only interpreted in a handful of cases. But we can garner at least three principles from those cases that we apply in our analysis today.

First, the State shoulders the burden of establishing that the no-limitation statute applies as an exception to the general ten-year statute of limitations for sexual assault cases. *See Ex parte Campozano*, 610 S.W.3d at 578 (recognizing that the State had the burden of establishing that all three requirements in the no-limitation statute were met in response to the defendant's habeas petition); *State v. Schunior*, 467 S.W.3d 79, 81 (Tex. App.—San Antonio 2015), *aff'd*, 506 S.W.3d 29 (Tex. Crim. App. 2016) (recognizing that a statute of limitations is "construed strictly against the State and liberally in favor of the defendant [and] . . . [i]f it appears the alleged offense is barred by limitations, then the State must plead and prove factors tolling the limitations period).

---

[15] See citation and explanation in footnote 3.

Second, although the Code provides that the biological material collected from a complainant must be submitted during law enforcement's "investigation" of a case, there are no temporal limits in the statute regarding how long an investigation may last, nor any prohibition against law enforcement temporarily suspending its investigation, such as here, when a complainant appears unwilling to cooperate. *See Ex parte Lovings*, 480 S.W.3d at 111–12 (recognizing that the statute does not impose any "temporal limits" on how long a police investigation may last and that an investigation may be considered ongoing even if suspended due to the complainant's failure to cooperate). In addition, courts have expressly held that there is no time limit stated in the Code by which the State must submit the biological material collected from a complainant for DNA testing. *See Ex parte Campozano*, 610 S.W.3d at 576 (holding that the no-limitation statute applied where sexual assault occurred in 2000, but the biological material collected from the complainant was not submitted for DNA testing until 2015, as there are no temporal limits in the Code for the police to submit the material for testing earlier) (citing *Ex parte Montgomery*, No. 05-19-01237-CR, 2017 WL 3271088 at *1 (Tex. App.—Dallas Sept. 23, 2020, pet. ref'd) (finding the no-limitation statute applied where victim was sexually assaulted in 1989, but DNA testing on recovered biological evidence did not occur until 2012)).

Third, there is no requirement in the Code that law enforcement take any affirmative steps to obtain a DNA match after a DNA profile has been extracted from the collected biological material. The only requirement for applying the no-limitation statute is that the biological material be submitted for *testing*; there is no requirement that law enforcement submit the DNA profile to the CODIS database within a certain time. *Ex parte Lovings*, 480 S.W.3d at 112 (recognizing that there is no diligence requirement in the Code and that if the legislature had meant to impose additional duties on the State to take proactive steps to ensure a DNA match, "it could have done

13

so explicitly"); *Ex parte Campozano*, 610 S.W.3d at 580 (recognizing that "[t]he statute as written does not require the State to fish for suspects in the CODIS database").

With these principles in mind, we turn to Verdines's argument that the State did not meet its burden of establishing that the no-limitation statute applies to his case.

### C. The statutory requirements were met.

Verdines concedes that the first two requirements of the no-limitation statute were met: as biological material was collected from the complainant and the material was submitted for testing. He does not contend that the State was required to submit the biological testing within a certain time period or that the State was required to take any affirmative steps to secure a match in the CODIS system within a certain time.

Nevertheless, with regard to the third requirement of the no-limitation statute, Verdines argues the State failed to establish that the "testing results" did not match the victim or "any other person whose identity is readily ascertained[.]" To the contrary, he argues, there was a 2008 match in the CODIS database and law enforcement knew his identity as a possible suspect in the 2003 sexual assault at that time regardless of whether SAPD was notified of the match. Therefore, he contends, the State only had until 2018 to indict him. We find at least three problems with this argument.

### (1) The no-limitation statute is not a tolling provision.

First, Verdines's argument would, in effect, require us to treat the no-limitation statute as a tolling provision serving to toll the ten-year statute of limitations until after biological material is collected and a DNA profile extracted, but to run once a DNA match is made and the person's identity is ascertained.[16] We do not agree with this interpretation. The no-limitation statute clearly

---

[16] We note that Verdines's argument appears to assume that the biological material from the complainant's breast swab was tested in 2003 when it was collected and that a match occurred in 2008. But as explained below, the record does not support such an assumption.

14

states that the "no limitation" provision applies when the three requirements are met, i.e., that (1) biological matter was collected, and (2) the material was subjected to DNA testing, and (3) the "testing results" do not match the victim or "any other person whose identity is readily ascertained." If the legislature had wished to make this a tolling provision, it would have done so, just as it has done in other provisions with language to make it clear that it is temporarily suspending or pausing the running of the statute of limitations by indicating that certain periods of time will not be computed under specified conditions. *See, e.g.*, Tex. Code Crim. Proc. Ann. art. 12.05(a) ("The time during which the accused is absent from the state shall not be computed in the period of limitation."); *Id.* art. 12.05(b) ("The time during the pendency of an indictment, information, or complaint shall not be computed in the period of limitation."). Here, the no-limitation statute does not use any such language and therefore cannot be construed as a tolling provision. Thus, if the three requirements of the no-limitation statute are met, it does not matter if or when a DNA match later occurs, as the match does not revive the ten-year statute of limitations or cause it to start running; to the contrary, if the requirements are met, by the very terms of the statute, there is simply no statute of limitations applicable to the case.[17] *See Ex parte Montgomery*, 2017 WL 3271088, at *1–4 (limitations period for sexual assault and aggravated sexual assault eliminated if Article 12.01(1)(C)(i) requirements are satisfied).

---

[17] We note that there is a growing trend in the United States to remove, or at least extend, the statute of limitations for sexual assault cases, given the number of sexual assault cases that are never resolved. G. M. Valenta, *DNA Matches to Unadjudicated Rape Cases as a Sentencing Factor: Can They be Justified?*, 53 Hous. L. Rev. 1503, 1504–05 (2016). The Texas Legislature addressed this issue by providing that there is no statute of limitations for certain types of sexual assault cases, such as those involving victims who are under 17 years of age and sexual assault cases involving DNA testing, and by extending the five-year statute of limitations to ten years in all other types of sexual assault cases. *Id.*

**(2)   The record does not support a finding that there was a 2008 CODIS match.**

Second, we do not agree with Verdines that a CODIS match was made in 2008 between the DNA profile in the complainant's 2003 breast swab and his DNA profile that was in the CODIS database. As he did in the trial court, on appeal, Verdines relies on the Sailors letter, pointing to the passing reference Sailors made to a 2008 DNA match. However, the Sailors letter was addressed to the Bexar County Sheriff's Office, which had been handling the 1998 sexual assault case from which Verdines's DNA profile was obtained, but the Sheriff's Office was *not* handling the 2003 sexual assault case. The SAPD was. Thus, when Sailors stated that "your case" was previously involved in a CODIS match and that the "personal identifying information for this convicted offender" was "provided to you" in July 2008, the only reasonable interpretation was that Sailors was referring to a match that was made to Verdines's DNA in the Sheriff's 1998 case.[18] This interpretation is bolstered by the fact that DPS then notified SAPD about the database match between Verdines's 1998 DNA profile and the DNA profile extracted from the complainant's breast swab in the 2003 case, and suggested to SAPD that it contact the Sheriff's Office for more information about the match. In turn, DPS later directly notified SAPD that the match in the 2003 case had been confirmed and provided SAPD with Verdines's identifying information.

Moreover, there is nothing in the record to suggest that the complainant's breast swab was subjected to DNA testing prior to its submission to BODE Technologies in February 2015. Therefore, we find no basis to conclude that the 2008 match referenced in the Sailors letter referred to a match between Verdines's DNA profile and the DNA profile in the breast swab in the 2003 case.

---

[18] We further note that although Verdines was not convicted in the 1998 case, the State filed a notice in the trial court of its intention to present evidence at trial that he had a long list of prior convictions in other cases.

16

**(3) The 2015 "testing results" produced a DNA profile of an unknown donor.**

Having eliminated the reference to the 2008 DNA match from our analysis, the record before us demonstrates that after the complainant's breast swab was submitted for DNA testing in 2015, the first CODIS match occurred in October of 2018. But we must still determine whether, in the interim, the third requirement of the statute was met, i.e., whether the "testing results" from BODE demonstrated that the DNA profiles extracted from the breast material did not match the victim or "any other person whose identity is readily ascertained." The record does not contain any formal report from BODE Technologies, or any other lab, directly confirming the "testing results" from the 2018 match. In other words, there is no report in the record indicating whether the DNA extracted matched the victim or another person whose identity was "readily ascertained." But we do not find that the lack of a report forecloses us from finding that the third requirement was met.

There appear to be four cases that discuss this requirement. In two of those cases, *Campozano* and *Lovings*, after law enforcement submitted the complainants' swabs for testing, they received a "report" stating that the analysis produced a DNA profile of an unknown male donor. *See Ex parte Lovings*, 480 S.W.3d at 108 (after material collected from complainant as part of her sexual assault exam was submitted to the Houston Police Department Crime Lab, the lab issued an "analysis report" identifying the DNA of the complainant and "at least one male donor"); *Ex parte Campozano*, 610 S.W.3d at 574 (lab where biological material was submitted "produced a report showing one of the tested items contained DNA that was a mixture from the complainant and a male contributor"). In both cases, the victims did not know the identity of the person who assaulted them, and a DNA match was not made until much later when the DNA profile from the analysis was uploaded into CODIS. In both cases, the courts found that given the lack of a known suspect, the testing results containing the DNA profile of a male donor was sufficient to satisfy the

17

third requirement in the no-limitation statute, as it existed at the time, i.e., the testing results did not match the victim or "any other person whose identity is readily ascertained." *Ex parte Lovings*, 480 S.W.3d at 112; *Ex parte Campozano*, 610 S.W.3d at 581.

As the court did in *Campozano*, we contrast this with two other cases in which courts have held that the State did not meet the requirement. First, in *Ex parte S.B.M.*, 467 S.W.3d 715 (Tex. App.—Fort Worth 2015, no pet.), testing was performed on biological material collected from a sexual assault victim, but no DNA profiles could be extracted from the material; in other words, "the results simply show[ed] nothing." *Id.* at 719. The court in *S.B.M.* therefore held that the requirements of the no-limitation statute were not met, as the statute contemplated that the material tested must produce a DNA profile of an unknown donor. *Id.* at 719–20. Second, in *Ex parte Edwards*, the court held that the State had failed to meet its burden of proof on the third requirement of the no-limitation statute, where the record reflected that the test results were still pending at the time of the defendant's habeas hearing.[19] *Ex parte Edwards*, 608 S.W.3d 325, 336 (Tex. App.—Houston [1st Dist.] 2020), *rev'd on other grounds*, 663 S.W.3d 614 (Tex. Crim. App. 2022).

Here, we find Verdines's case to be more like the situation in *Lovings* and *Campozano* than the situations in *S.B.M.* or *Edwards*. First, unlike in *S.B.M.*, where no DNA was extracted from the biological material, we can reasonably infer that the breast swab in this case did in fact produce a DNA profile, as the record undisputedly reflects that the DNA profile was uploaded into CODIS at some point prior to the 2018 match. Because the record also undisputedly established that the DNA profile uploaded into CODIS matched Verdines's DNA profile, we can reasonably infer that

---

[19] We note that the Court of Criminal Appeals reversed the court of appeals' decision in *Edwards* based on its conclusion that the defendant's statute of limitations argument was not properly brought in a pretrial habeas proceeding, and the court therefore did not address the merits of the court's ruling that the State did not meet the requirements of the no-limitation statute. *Ex parte Edwards*, 663 S.W.3d 614, 619 (Tex. Crim. App. 2022).

18

the testing results produced DNA that did not match the complainant or any other person whose identity was readily ascertained at the time. The complainant herein, like the complainants in *Lovings* and *Campozano*, did not know the identity of their assailants, and the identity of the person whose DNA profile was extracted from the breast swab was therefore not "readily ascertained" at that time.

In addition, unlike the situation in *Edwards* in which the lab results were still "pending" at the time the defendant brought his habeas petition, we can safely say that the lab in Verdines's case had completed its testing and reported its results to law enforcement, which then uploaded the DNA profile into the CODIS database. Once again, we find it significant that a match was later made between the DNA profile extracted from the breast swab and Verdines's DNA profile, which can only lead to one conclusion, i.e., that the lab's "testing results" detected a DNA profile that did not belong to either the complainant or a known suspect.

We therefore conclude that all three prongs of the no-limitation statute were met, and consequently no statute of limitations applied to Verdines's case.

Verdines's first issue is overruled.

## VII. DEFECTS ON THE FACE OF THE INDICTMENT

In his second issue, Verdines contends the trial court erred in failing to grant his motion to dismiss because the indictment did not indicate on its face that the prosecution was not time-barred. *See Tita v. State*, 267 S.W.3d 33, 37 (Tex. Crim. App. 2008) (recognizing that "Article 21.02(6) requires that an indictment indicate on its face that a prosecution thereunder is not barred by the applicable statute of limitations.") (citing Tex. Code Crim. Proc. Ann. art. 21.02(6) ("[t]he time mentioned [in an indictment] must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation"); *see also Ex parte Smith*, 178 S.W.3d at 803 (recognizing that "if the State's pleading includes a 'tolling paragraph,'

'explanatory averments,' or even 'innuendo allegations,' this suffices to show that the charged offense is not, at least on the face of the indictment, barred by limitations."). Verdines contends that because the indictment did not contain any language indicating that the State intended to rely on the no-limitation exception to the ten-year statute of limitations, the State's indictment was defective, thereby requiring dismissal of his case.

As the State points out, however, Verdines did not raise any objections in the trial court to the form of the indictment, or otherwise allege that the indictment was defective. Instead, throughout the trial court proceedings, Verdines's argument was focused solely on the substantive question of whether the statute of limitations had run before he was indicted in the 2003 case, and he expressly sought dismissal on the basis that the "indictment [was] presented outside the statute of limitations."

As the State also points out, defects in the form of an indictment must be raised in the trial court in order to be preserved for appeal. Tex. Code Crim. Proc. Ann. art. 1.14(b) ("If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding."). "The right to be charged by an instrument that is free of defects, errors, and omissions" is not considered a "fundamental" right, and any such right is therefore waived without an objection. *Sanchez v. State*, 120 S.W.3d 359, 367 (Tex. Crim. App. 2003) (en banc).

The reason for requiring an objection to the form of an indictment in the trial court is to give the State the opportunity to repair or amend the indictment before the start of trial. *See Ex parte Smith*, 178 S.W.3d at 805 (recognizing that although the State's "tolling allegation" in the indictment may have been deficient, such a "deficiency could be raised only in a pretrial motion

20

to dismiss or quash the information [because] the State must be given an opportunity to repair or amend its pleading before the start of trial"). Here, had Verdines raised the issue, the State could have easily amended the indictment to allege that the no-limitation statute applied. *See Tita*, 267 S.W.3d at 38 n.6 (recognizing that if, prior to trial, the trial court had granted appellant's motion to dismiss the indictment for failure to show the statute of limitation had not run, "then, presumably, the State could have amended the indictment and the prosecution could have proceeded") (citing Tex. Code Crim. Proc. Ann. art. 28.09 ("If the exception to an indictment or information is sustained, the information or indictment may be amended . . . and the cause may proceed upon the amended indictment or information")); *see also Lewis v. State*, No. 04-22-00293-CR, 2023 WL 5602375, at *6 (Tex. App.—San Antonio Aug. 30, 2023, no pet.) (mem. op., not designated for publication) (recognizing that if the trial court had granted defendant's motion to quash the information based on the lack of limitations language, the State could have amended the information to include a tolling paragraph because the limitations period had not yet run).

Because Verdines failed to make an objection to the face of the indictment in the trial court, the State was not given the opportunity to amend the indictment. We therefore conclude that he did not preserve this issue for our review.

Verdines's second issue is overruled.

## VIII. MOTION TO SUPPRESS

In his third issue, Verdines asserts the trial court erred by denying his motion to suppress. We conclude that Verdines did not preserve this issue for our review, as he failed to provide us with an adequate record from which we can determine whether the trial court's order was in error.

### A. Background

Although not raised in his written motion to suppress, at the hearing on his motion, Verdines argued the State should be prohibited from referring to his 1998 case, or any evidence

obtained in that case (including his DNA profile), because the 1998 case had been expunged in October 2019, and the expunction order included expunction of the DNA record in that case. During the hearing, the State agreed that because the 1998 case had been expunged, it would not refer to the 1998 case at trial and would not refer to the DNA profile obtained in that case or the 2018 CODIS match. However, the State argued it should be able to refer to the buccal swab SAPD took from Verdines in June 2019 and the "new" match that occurred between the DNA profile in the buccal swab and the DNA profile in the breast swab, as it was legally obtained without regard to the later October 2019 expunction order.

Verdines argued that the search warrant which led to the "new" match from the 2019 buccal sample was based solely on the CODIS match with his DNA profile from the 1998 case, and the warrant should therefore be suppressed pursuant to the expunction order. He further argued it would be impossible for the State to explain to the jury how the warrant was obtained without referring to the 1998 case. In turn, he argued that the existence of this evidentiary gap would deprive him of a fair trial, as the jury would be forced to speculate as to how the search warrant was obtained. Verdines, however, informed the court that he intended to ask for a separate hearing on the issue of the admissibility of the warrant, and then he stated that for "today's hearing, I'm just asking the Court to suppress any discussion or any testimony or evidence from the case that has been expunged, which would be his original case that was dismissed."

At the close of the hearing, the trial court stated it would take the matter under advisement, and it subsequently issued an order denying the motion without explanation.

### B. Standard of review

We review a trial court's ruling on a motion to suppress under a bifurcated standard, giving "almost total deference" to the trial court's findings of historical fact supported by the record, but reviewing de novo its application of the law to the facts. *Carmouche v. State*, 10 S.W.3d 323, 327

22

(Tex. Crim. App. 2000). When, as here, the trial court did not make explicit findings of fact in support of its decision, we review the evidence in a light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *See Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). We will uphold a trial court's ruling on a motion to suppress if it is correct under any theory of law. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

As a general rule, an appellant has the burden to present a record on appeal showing reversible error. *Word v. State*, 206 S.W.3d 646, 651–52 (Tex. Crim. App. 2006); *see also Amador v. State*, 221 S.W.3d 666, 675 (Tex. Crim. App. 2007) (as an appellate court, we cannot "speculate about the contents of exhibits or other materials that are not contained in the appellate record"). The failure to provide a sufficient appellate record precludes appellate review of a claim. *London v. State*, 490 S.W.3d 503, 508 (Tex. Crim. App. 2016).

### C. Analysis

On appeal, Verdines characterizes the trial court's order as "allowing the state at trial to present evidence of a dismissed and expunged sexual assault case." He then argues the ruling was erroneous because the expunction order from his 1998 case prohibited the State from using any records, including the DNA records, in the trial of the 2003 sexual assault.[20] *See Matter of S.E.J.*, 621 S.W.3d 778, 782 (Tex. App.—El Paso 2021, no pet.) (recognizing that "[a]n expunction order requires governmental agencies to return, remove, delete, or destroy all records of a person's arrest and generally permits the person to deny the occurrence of the arrest and the existence of the expunction order") (citing Tex. Code Crim. Proc. Ann. arts. 55.02–55.03).

---

[20] Verdines suggests that even though records of the 1998 proceeding would be inadmissible at his trial, a witness would be permitted to testify regarding their memory of what occurred in the 1998 case. But he contends it is doubtful there would be anyone available to do so 25 years later.

23

We conclude, however, that Verdines did not provide a sufficient record to enable this Court to determine whether the trial court abused its discretion in denying his motion to suppress. Although Verdines repeatedly referred to the October 2019 expunction order at the suppression hearing, he did not offer it in evidence. Nor did he ask the trial court to take judicial notice of the order, and there is nothing in the record to suggest that the trial court took judicial notice of the order sua sponte. *See* Tex. R. Evid. 201 ("Judicial Notice of Adjudicative Facts").

Even assuming a final expunction order existed, we have no way of knowing its terms, whether it allowed for the use of any records pertaining to the 1998 case, and in particular, whether the expunction order covered the DNA evidence that was in the CODIS database from the 1998 case. *See generally State v. T.S.N.*, 547 S.W.3d 617, 623 (Tex. 2018) (recognizing that the legislature's decision to allow expunction under limited, specified circumstances, "evidences its intent to, under certain circumstances, free persons from the permanent shadow and burden of an arrest record, even while requiring arrest records to be maintained for use in subsequent punishment proceedings and to document and deter recidivism").

Similarly, there is nothing in the record to suggest Verdines followed the necessary steps to have his DNA record in the 1998 case expunged from the CODIS database by tendering the expunction order to the director of DPS as required by the Government Code. *See* Tex. Gov't Code Ann. § 411.151(a). Even if Verdines had submitted the expunction order to the director of DPS, the Government Code does not require the director to "expunge a record or destroy a sample if the director determines that the individual is otherwise required to submit a DNA sample under this subchapter."[21] Tex. Gov't Code Ann. § 411.151(c). Without any such evidence, we have no way of knowing whether the director made any such determination.

[21] As the State points out, "[t]he Department's failure to expunge a DNA record as required by this section may not serve as the sole grounds for a court in a criminal proceeding to exclude evidence based on or derived from the contents of that record. Tex. Gov't Code Ann. § 411.151(e). Accordingly, even if the director erroneously failed to expunge

24

Accordingly, we cannot say what evidence from the 1998 case the State was prohibited from using at Verdines's 2003 trial. *See McClendon v. State*, No. 13-16-00230-CR, 2017 WL 4684179, at *3–4 (Tex. App.—Corpus Christi Oct. 19, 2017, pet. ref'd) (mem. op., not designated for publication) (holding that where appellant relied on an expunction order of a prior arrest to suppress certain evidence at his upcoming trial in a separate proceeding but failed to produce a copy of his expunction order in the trial court, there was insufficient evidence from which court of appeals could determine whether certain evidence was inadmissible under the terms of the order). Accordingly, we conclude that Verdines did not meet his burden of providing a sufficient appellate record to allow us to determine whether the trial court erred in denying his motion to suppress.

Verdines's third issue is overruled.

## IV. CONCLUSION

We affirm the trial court's judgment of conviction.

LISA J. SOTO, Justice

October 15, 2024

Before Palafox and Soto, JJ. and Salas Mendoza, Judge
Palafox, J. concurring without written opinion
Salas Mendoza, Judge (sitting by assignment)

(Publish)

---

the record of Verdines's DNA profile obtained in the 1998 proceeding, this would not necessarily prohibit the State from relying on the record of those results in the 2003 proceeding.